[No. 53040–8.   En Banc.   September 8, 1988.]

THE STATE OF WASHINGTON, *Respondent*, v. TIMOTHY
SOMMERVILLE, *Appellant*.

*Thomas Bothwell* and *Prediletto, Halpin, Cannon, Scharnikow & Bothwell, P.S.,* for appellant.

*Jeffrey C. Sullivan, Prosecuting Attorney,* and *Robert N. Hackett, Jr., Deputy,* for respondent.

DORE, J.—We hold that a court considering a motion for acquittal by reason of insanity under RCW 10.77.080 should analyze the merits of the question and determine whether the defendant has proved insanity by a preponderance of the evidence. The court must do more than merely determine whether a jury question is presented. In addition, we hold that a defendant acquitted of murder by reason of insanity and convicted of the rape of a separate victim should be committed to the custody of the Department of Social and Health Services and should serve his prison time on his rape conviction only after the Secretary of DSHS has released him from criminal commitment.

## FACTS

Timothy Sommerville awoke early on the morning of November 24, 1985, got out of bed, dressed, went to the next room, picked up a baseball bat, returned to his bedroom and struck his wife Crystal three times in the head, killing her instantly. Sommerville described his state of mind during the course of these actions as if he "was watching TV". He testified that it was as if "'I was watching me do it'", and that "'It didn't feel like anything I could stop.'" Clerk's Papers, at 25.

Immediately after the murder, Sommerville went upstairs to the bedroom of his stepdaughter. He raised the bat to strike her, but put the bat down. Instead he woke the stepdaughter and instructed her to undress. He then demanded that she have sex with him. She refused and he

produced a folding knife and repeated his demands. She performed oral sex on him, but when he demanded intercourse protested that she was a virgin. As a result, he attempted anal intercourse instead, but was unable to penetrate. Sommerville and his stepdaughter then walked downstairs to a bathroom and obtained a lubricant. As they passed the bedroom in which Crystal lay dead, Sommerville told his stepdaughter to be quiet because she might wake her mother up. After returning to the girl's bedroom, Sommerville again attempted anal intercourse, penetrated and ejaculated. Report of Proceedings, at 254–61.

Sommerville testified that at that moment he came to his senses. He sat down on the edge of his stepdaughter's bed, saying that he had killed Crystal. He then called the Yakima Sheriff's Department and Crystal's mother. He was arrested as soon as a deputy arrived.

At the hearing on Sommerville's motion for acquittal by reason of insanity, psychologists for the State and the defense agreed that at the time of the murder, Sommerville was in a "depersonalized state" and that as a result he was unable to appreciate the nature of his actions. The State's expert, Dr. Duthie, testified:

Q All right. And, first of all, what is your opinion concerning the defendant's legal responsibility at the time of the murder of his wife?
A Well, my opinion—in technical terms—at that point in time, he did not really appreciate the nature and quality of the act he was committing.
Q Why do you state that?
A Because of his description of how he was perceiving of his wife, his detached state, the almost affectless way he described his thinking at the time which was very much a contrast to—to the way I perceived him in the jail.
He was extremely upset about what he did, cried on at least two separate occasions.
So there was a real discrepancy there.

Report of Proceedings vol. 5, at 510–11.

As to Sommerville's state at the time of the rape, the experts disagreed. The defense's expert testified that Sommerville's depersonalized state continued throughout the murder and the rape, and that he was not responsible for either act.

Q Dr. White, do you have an opinion concerning whether Tim was sane or insane at the time that he hit Crystal with the bat and had sexual relations with [the step-daughter]?

A In the state I understand sane is defined as able to perceive right and wrong. It's a cognitive explanation, able to act with intent.

What it sounds like to me in this situation was that the intellectual faculties were essentially suspended. He was acting; he was aware that he was acting. But his description is as if it was not he that was acting, it was as if he was watching somebody act. Therefore the conclusion in our letter that he was unable to define or to differentiate right from wrong at that specific instant or act with intent or premeditation or planning . . .

. . .

He was unable to differentiate and in my opinion, he was unable to perceive the nature and the awesome impact of the acts which had taken place at that moment in time.

Report of Proceedings vol. 1, at 66–67.

The State's expert, on the other hand, concluded that the depersonalized state had significantly lapsed by the time of the rape.

A I believe he—it's my professional opinion that he was sane at the time that he raped the stepdaughter, that he was aware of those acts to a significant degree to be held responsible for those.

Q All right.

Why do you think—why does your opinion change for events that occurred within seconds or minutes of each other?

A First of all, depersonalized states like that in some cases can wear off; they can gradually wear off so there is a time.

There was also decision making, very—in my opinion, very complex decision making happening. I still think he was in a depersonalized state, but I think he did have control over what his actions were even though he was in that state.

He made choices—he made a choice not to hit her with a baseball bat. He made choices about the kind of sexual activity that they would have and did some rather complex verbal interacting with [the stepdaughter] at that time.

And while he's still in some sort of a trance or disassociative [sic] state at the time, that dialogue would indicate to me that he was able to make some decisions and he knew what he was doing.

Report of Proceedings vol. 5, at 515–16.

Sommerville moved for a verdict of acquittal on both counts by reason of insanity under RCW 10.77.080. The trial court found Sommerville insane at the time of the murder, but with regard to the rape held:

The defendant has failed to prove by a preponderance of the evidence that at the time of the commission of the crime of First Degree Rape as to his stepdaughter . . . that he was not criminally responsible for those acts which constitute Rape in the First Degree.

Clerk's Papers, at 26–27. The trial court therefore left the question of insanity with regard to the rape to a jury, in accordance with RCW 10.77.080. Following a jury trial, a verdict of guilty was returned on the rape charge.

The trial court sentenced Sommerville to 68 months on the first degree rape charge, which is within the standard range of 51 to 68 months. In its order of commitment on the murder charge, the trial court found that Sommerville presented a substantial danger to other persons and presented a substantial likelihood of committing further felonious acts. Sommerville was therefore committed to the custody of DSHS for a period "not to exceed the maximum sentence for First Degree Murder, which is Life Imprisonment." However, the trial court's order specified that:

It Is Further Ordered that this commitment shall not commence until the defendant completes all terms of

imprisonment pursuant to his conviction for First Degree Rape under this cause.

Clerk's Papers, at 12.

## ISSUES

The parties have raised three principal issues. First, in deciding a motion for acquittal by reason of insanity under RCW 10.77.080, should the trial judge weigh evidence or merely determine whether a jury question is presented? Second, did the trial court err in not acquitting Sommerville on the rape charge by reason of insanity? Third, did the trial court err in sentencing Sommerville to serve his time in jail prior to his being committed to the custody of DSHS?

### THE TRIAL COURT WEIGHS EVIDENCE IN DECIDING
### A MOTION TO ACQUIT BY REASON
### OF INSANITY

In considering a motion for acquittal by reason of insanity, the trial court should weigh the evidence and decide whether the defendant has proven insanity by a preponderance.

▪ The standard to be applied in considering a motion for acquittal based on insanity is established by statute. RCW 10.77.080 provides in part:

> At the hearing upon said motion the defendant shall have the burden of proving *by a preponderance of the evidence* that he was insane at the time of the offense or offenses with which he is charged. . . . If the motion is denied, the question may be submitted to the trier of fact in the same manner as other issues of fact.

(Italics ours.) The plain words of the statute imply that the judge hearing the motion should weigh evidence. He would have to do so in order to determine at the hearing whether insanity had been proved by a preponderance.

However, the State argues that insanity is a jury question and that the judge should not weigh evidence. Instead, according to the State, the judge deciding the motion

should treat the question like a motion for summary judgment, defer to the jury and deny the motion for acquittal if there is any conflict in the evidence. In support of this argument, the State relies on the following passage from *State v. McDonald,* 89 Wn.2d 256, 267, 571 P.2d 930 (1977).

> Viewing the evidence in the light most favorable to the prevailing party, the facts of the crime provide direct evidence of defendant's sanity. . . . Clearly the trial judge did not err in submitting the issue to the jury. The question of sanity is one of fact and should go to the jury when there is conflicting evidence on the issue.

From a defendant's point of view, the conflict–in–the–evidence standard is more onerous than the preponderance standard. If the question of sanity on a motion under RCW 10.77.080 is a jury question, as *McDonald* suggests, the judge is prohibited from usurping the jury's function by weighing evidence. Therefore, the defendant's motion will be granted only where the evidence is so overwhelming that no jury could reasonably find in favor of the State, even when all the evidence is construed in its favor. In the context of a motion for acquittal under RCW 10.77.080, this means that the State would only have to come forward with *some* evidence of sanity. However, if the judge considering a motion under RCW 10.77.080 is to weigh evidence and determine whether the defendant has carried his burden by a preponderance, the State would have to do more. It would have to produce evidence which is equal to or greater than the defendant's in probative value.

Sommerville contends that the trial court followed *McDonald* and asked only whether there was evidence from which a jury could reasonably conclude that he was not insane. He argues that this was error because the proper standard, under the plain words of RCW 10.77.080, is whether the evidence favoring Sommerville predominated. He asks the court to overrule or limit *McDonald* and to reverse his conviction on the rape charge.

Sommerville is correct that *McDonald* should be over-ruled in this regard and we hereby do so. The plain words of RCW 10.77.080 should prevail. The trial court must weigh the evidence and acquit if the evidence preponder-ates in favor of the defendant. We affirm Sommerville's conviction, however, because the trial court here did weigh the evidence as required by statute and properly decided that Sommerville had not sustained his burden of proof.

In construing any statute, we should attempt to give effect to the plain meaning of the words the Legislature has used. Each provision is viewed in relation to other provi-sions and the object is a consistent construction of the whole. *Addleman v. Board of Prison Terms & Paroles*, 107 Wn.2d 503, 509, 730 P.2d 1327 (1986). In addition to its reference to the preponderance standard, RCW 10.77.080 provides:

> If the court finds that the defendant should be acquitted by reason of insanity, it shall enter specific findings in substantially the same form as set forth in RCW 10.77-.040 as now or hereafter amended.

RCW 10.77.040 sets forth the special verdict form for a jury's consideration of the insanity question. Obviously, the Legislature meant a judge considering this motion to con-sider the same question considered by the jury: whether as a matter of fact the defendant was insane at the time of the act charged.

A case decided under the former RCW 10.77.080 demon-strates why the court should weigh the evidence.[1] In *State*

---

[1]Former RCW 10.77.080 provided:

"If the report filed pursuant to [RCW 10.77.060] finds that the defendant at the time of the criminal conduct charged did not have capacity to either (1) know or appreciate the nature and consequence of such conduct; or (2) know or appre-ciate the criminality of such conduct, the defendant, upon notification to the prosecuting attorney, may move that a judgment of acquittal on the grounds of mental disease or defect excluding responsibility be entered. If the court, after a hearing on the motion, is satisfied that such impairment was sufficient to exclude responsibility, the court shall enter judgment of acquittal on the grounds of men-tal disease or defect excluding responsibility. If the motion is denied, the question shall be submitted to the trier of fact in the same manner as all other issues of fact." Laws of 1973, 1st Ex. Sess., ch. 117, § 8, p. 799.

*v. Jones,* 84 Wn.2d 823, 529 P.2d 1040 (1974), the court considered whether the procedure under RCW 10.77.080 violated the defendant's right to a jury trial. (We note that this question would not have arisen at all if the judge's role in the hearing were only to decide whether a jury question is presented.) The court held:

> The procedure utilized by the defendant in this case *is a statutory alternative to a jury trial,* available to the defendant at his own election. . . . By invoking the statutory procedure . . . the respondent waived the right to have a jury decide whether he committed the act charged, *provided the court should find that he was not responsible by reason of his mental condition.* Significantly the court may not enter any judgment other than acquittal. If it is not satisfied that such a judgment should be entered, the question must be submitted to the trier of fact at a regular trial. Far from denying the defendant a constitutional right, *the statute bestows upon him a new right, not heretofore enjoyed.*

(Italics ours.) *Jones,* at 832–33. Even though the former RCW 10.77.080 did not refer to the preponderance standard, the "new right" referred to is clearly the right to have the judge find insanity as a matter of fact, where before the judge could only have found insanity as a matter of law under the more burdensome conflict–in–the–evidence standard, *i.e.,* by granting the defendant summary judgment or a directed verdict.

Therefore, in considering a motion for acquittal by reason of insanity under RCW 10.77.080, the trial court should decide the question as a matter of fact, weighing the evidence under a preponderance of the evidence standard.

### THE TRIAL COURT DID NOT ERR IN REFUSING TO ACQUIT ON THE RAPE CHARGE

The next question is whether the judge here applied the stringent conflict–of–the–evidence standard appropriate to summary judgment, as Sommerville contends, or whether he weighed the evidence pursuant to RCW 10.77.080. The record does not support Sommerville's contention. As noted, the court's written findings of fact (presented by

defense counsel) apply the preponderance standard. Sommerville cites the court's oral ruling to argue that he was held to the higher, conflict–of–the–evidence standard.

> As to Count Two, First Degree Rape, there was not the unanimity of opinion. There was a conflict in the evidence. And considering the opinions of the experts, the testimony of others including [the stepdaughter] and my perception and evaluation of the testimony, it is my opinion that a sufficient factual issue is raised[,] that the Court cannot say that the burden of proof has been met and therefore as a matter of law cannot conclude that the defendant was insane at that time. And therefore that issue must be decided by a jury.

Report of Proceedings vol. 6, at 663.

This passage does not support Sommerville's contention. First, the sentence "There was a conflict in the evidence", should not be given too much weight. As noted above, the experts were unanimous on Sommerville's insanity at the time of the murder. By noting the conflict in the evidence in regard to his state during the rape, the judge is merely noting the contrast, not applying a conflict–of–the–evidence standard. Second, the judge clearly seems to be weighing the evidence when he cites "my perception and evaluation of the testimony". Third, it is significant that the judge finds that the defendant's burden of proof has not been met, since a court's application of the conflict–in–the–evidence standard does not involve weighing evidence under a burden of proof. Fourth, it is worth noting that the judge does *not* say: I cannot conclude that the defendant was insane as a matter of law. Rather, he states that "as a matter of law [I] cannot conclude that the defendant was insane at that time", *i.e.,* that since Sommerville did not meet his burden, RCW 10.77.080 precludes the court from finding Sommerville insane as to the rape count.

█ Therefore, the trial court properly weighed the evidence and decided the issue of insanity according to the preponderance of the evidence standard of RCW 10.77.080. The trial court's denial of Sommerville's motion for acquittal on the rape charge was a determination of fact. A

reviewing court is limited to considering only whether the lower court's conclusions of fact are supported by substantial evidence. Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise. *State v. Thetford,* 109 Wn.2d 392, 396, 745 P.2d 496 (1987). The trial court's conclusion meets that standard.

The State's expert testified that Sommerville was no longer completely subject to the depersonalized state at the time of the rape, that such states can wear off gradually, and that Sommerville engaged in complex conversation and decisionmaking during the rape. The conversation and decisionmaking, to which both Sommerville and his stepdaughter testified, would indicate that he was aware of the nature and quality of his acts and of the difference between right and wrong with reference to those acts. *State v. Box,* 109 Wn.2d 320, 322, 745 P.2d 23 (1987). His decision not to insist on intercourse in light of his stepdaughter's objection that she was a virgin is especially significant.

The conviction on the rape charge is affirmed. The trial judge's decision that Sommerville had not proved insanity by a preponderance was not erroneous because it is supported by substantial evidence.

### Sommerville's Criminal Commitment Should Precede His Prison Sentence

■ The trial court ordered Sommerville to serve his sentence on the rape conviction before being handed over to the custody of DSHS to serve his criminal commitment on the murder charge. This was error. RCW 10.77.220 provides:

> No person confined pursuant to this chapter shall be incarcerated in a state correctional institution or facility: *Provided,* That nothing herein shall prohibit confinement in a mental health facility located wholly within a correctional institution. Confinement in a county jail or other local facility while awaiting either placement in a treatment program or a court hearing pursuant to this chapter is permitted for no more than seven days.

Sommerville correctly points out that this statute expressly prohibits the action taken by the trial judge. The court's "Verdict of Acquittal by Reason of Insanity and Order of Commitment" commits Sommerville to the custody of DSHS pursuant to RCW 10.77.110. Clerk's Papers, at 12. He is therefore "confined pursuant to this chapter" and falls within the rule of RCW 10.77.220.

The State attempts to get around the plain words of the statute by arguing that: "RCW 10.77.220 is not applicable to this situation because Mr. Sommerville was not ordered to be confined as a result of the verdict finding him not guilty by reason of insanity." Instead, the State contends he was committed to the custody of DSHS "based upon the conviction for First Degree Rape." Brief of Respondent, at 17–18. This is flatly contradicted by the court's order cited above which expressly states that Sommerville was committed to DSHS pursuant to RCW 10.77.110 and provides that the Department of Corrections shall have custody of him during his sentence on the rape charge. Clerk's Papers, at 12.

The State also argues that RCW 9.94A.120(4) mandates that a person convicted of an offense "shall be sentenced" to the Department of Corrections. However, the mandatory language of RCW 9.94A.120 runs up against the mandatory language of RCW 10.77.220 in this unusual case, and to say that RCW 9.94A.120 is dispositive is to beg the question.

A standard rule of statutory construction reconciles the conflict between the statutes in favor of committing Sommerville to DSHS pursuant to RCW 10.77.220. That statute states specific exceptions in which a prisoner can be incarcerated instead of committed to a mental institution. Under the rule of *expressio unius est exclusio alterius*— specific inclusions exclude implication—these exceptions are exclusive, and the further exception carved out by the trial court here is barred. *Queets Band v. State,* 102 Wn.2d 1, 5, 682 P.2d 909 (1984); *Washington Natural Gas Co. v. PUD 1,* 77 Wn.2d 94, 98, 459 P.2d 633 (1969); *State v. Roadhs,* 71 Wn.2d 705, 707, 430 P.2d 586 (1967). The trial

court did not find that any of the statute's exceptions applied here.

The plain policy behind RCW 10.77.220 is to ensure that prisoners in need of psychiatric care who cannot, as a result, fit into the normal prison population, are not put there. That policy applies as much to this case as to any other, and the trial court did not set out reasons why it does not apply.

As for the duration of Sommerville's commitment, the trial court ordered that it should not exceed the maximum sentence for first degree murder. This is contrary to RCW 10.77.200 which provides for final discharge only upon the approval of the secretary of DSHS and upon petition and hearing in court. Therefore, we hold that Sommerville should be remanded to the custody of DSHS until final discharge pursuant to RCW 10.77.200, thereafter to be remanded to the custody of the Department of Corrections to serve his sentence for first degree rape.

## Conclusion

RCW 10.77.080 requires a judge considering a motion to acquit by reason of insanity to weigh the evidence and grant the defendant's motion if he proves insanity by a preponderance of the evidence. The trial court complied with the statute, and we affirm its decision to send the issue of insanity with respect to the rape to the jury. The jury's conviction of Sommerville on that charge is affirmed. Since we find that the trial court's sentence does not comply with RCW 10.77.200 and 10.77.220, however, we remand the case for resentencing in accordance with those statutes.

PEARSON, C.J., and UTTER, BRACHTENBACH, DOLLIVER, ANDERSEN, CALLOW, and DURHAM, JJ., concur.