[No. 11555-1-III.   Division Three.   March 11, 1993.]

DOROTHY JACQUINS,[†] *Respondent*, v. THE DEPARTMENT OF SOCIAL AND HEALTH SERVICES, *Appellant*.

---

[†]Although this spelling appeared on the petition for review to the Superior Court from the final agency appeal, we have used the correct spelling in the opinion.

*Christine O. Gregoire, Attorney General,* and *Sarah J. Coats, Assistant,* for appellant.

*Moni T. Law* and *Marcia L. Mitchell* of *Evergreen Legal Services,* for respondent.

SHIELDS, C.J. — The Washington State Department of Social and Health Services (DSHS) appeals a superior court decision ordering it to pay Dorothy Jaquins financial and medical assistance retroactive to March 30, 1989, and attorney fees. The main issue on appeal is whether RCW 74.12-.330 requires DSHS to provide financial assistance to certain individuals not eligible for federal matching funds. We affirm.

Eddie and Adela Clark's natural mother is in Oregon on a 5-year state-sponsored drug rehabilitation program. Their natural father's whereabouts has been unknown for at least

3 years. No other relatives are willing to care for Eddie and Adela. Eleven years ago, when Eddie was 3 and Adela was 2, their mother gave them into the care of Mrs. Jaquins. The Yakima County Superior Court granted her permanent legal custody of the children on March 24, 1982, and she has cared for the children ever since. Mrs. Jaquins is 67 years old, retired, and partially disabled because of phlebitis. She is not a blood relative, nor has she applied to become a foster parent. Eddie, Adela, and Mrs. Jaquins subsist on her Social Security checks and food stamps, roughly $500 per month, and little else.

Mrs. Jaquins has found it difficult to obtain additional public assistance to support Eddie and Adela. In 1988, she applied to DSHS for financial assistance and was denied. She requested an adjudicative hearing under RCW 74.08-.080, but her request was untimely. On March 19, 1989, Eddie broke his clavicle, and Mrs. Jaquins again turned to DSHS for help.

The DSHS application form Mrs. Jaquins dated March 22, 1989, does not specify any particular program from which assistance will be given, such as Aid to Families With Dependent Children (AFDC) or the Limited Casualty Program — Medically Needy. Rather, the form presents applicants with a series of boxes to check: "I/WE NEED FINANCIAL HELP"; "I/WE NEED MEDICAL HELP"; and "I/WE HAVE A MEDICAL EMERGENCY". Mrs. Jaquins checked the two boxes mentioning medical help and medical emergency, and left the box mentioning financial help blank. She listed all of her financial information on the form, including her Social Security and Supplemental Security Income checks, Medicare, all other sources of income, and all real property owned.

DSHS denied Mrs. Jaquins' request in a form letter, with the following handwritten reason: "To qualify for medical under *ADC R* you must be living with a relative of specified degree". (Italics ours.) On June 8, 1989, Mrs. Jaquins timely requested an adjudicative hearing. In that request, she specifically asked for both financial and medical assistance.

In the July 11, 1989, hearing, the administrative law judge (ALJ) held that Mrs. Jaquins was eligible for both financial and medical assistance. The ALJ made several findings of fact, including: Mrs. Jaquins requested an adjudicative hearing for denial of AFDC financial and medical assistance; DSHS had decided the application as a claim for AFDC financial assistance; and none of Eddie and Adela's living relatives were willing to care for them. The ALJ concluded that Mrs. Jaquins was entitled to financial and medical assistance under RCW 74.12.330, notwithstanding she was not a "relative of specified degree".

DSHS appealed to an agency review judge (RJ). The RJ denied both medical and financial assistance. He adopted the ALJ's findings of fact, except he did not find substantial evidence to support the ALJ's finding of fact that DSHS had decided the application as a claim for AFDC financial assistance. Thus, he concluded there was no application for financial assistance.

The RJ denied medical assistance on the basis that Eddie and Adela did not meet the nonfinancial AFDC eligibility criteria, including RCW 74.12.330. He concluded that RCW 74.12.330 only applies to children who have already qualified for AFDC grants. He interpreted RCW 74.12.330 to mean that children who had lived with a "relative of specified degree", but were temporarily transferred to another caretaker, could receive interim payments until more permanent arrangements were made.

Mrs. Jaquins timely appealed this final agency action to the Yakima County Superior Court. She moved for summary judgment as to both financial and medical assistance. The court found there were no genuine issues of material fact and accepted March 22, 1989, as the date of Mrs. Jaquins' application for financial assistance. The court concluded that RCW 74.12.330 authorized both financial and medical assistance. On March 22, 1991, it granted the motion for summary judgment and ordered DSHS to pay financial and medical assistance, retroactive to March 30, 1989. DSHS promptly appealed.

After the court order on March 22, 1991, DSHS did not pay Mrs. Jaquins. Two months later, Mrs. Jaquins moved to enforce the judgment. The Superior Court granted her motion as to all assistance accruing after March 22, 1991, but stayed enforcement of the retroactive portion of the assistance pending a decision on appeal. On May 28, DSHS moved this court to stay payment of assistance ordered in the motion for enforcement. A Court of Appeals commissioner denied the motion.

On appeal DSHS only contests Mrs. Jaquins' right to financial assistance. Her eligibility for medical assistance is not at issue.

DSHS first contends the Superior Court lacked jurisdiction on the issue of financial assistance because Mrs. Jaquins failed to check that particular box on her application form. DSHS argues her failure to check this box meant she could not raise the issue of financial assistance on appeal to an ALJ, her 1988 request for adjudicative hearing was untimely, and she lacked standing to appeal.

■ We review the Superior Court's action de novo, since the question is whether the agency properly applied the law to the facts. *Franklin Cy. Sheriff's Office v. Sellers*, 97 Wn.2d 317, 329-30, 646 P.2d 113 (1982), *cert. denied*, 459 U.S. 1106 (1983).

■ Due process requires administrative agencies to give those it regulates full and fair opportunity to be heard on the merits of their claims. *Goldberg v. Kelly*, 397 U.S. 254, 25 L. Ed. 2d 287, 90 S. Ct. 1011 (1970). DSHS hearings are required by statute to be "conducted with the greatest degree of informality consistent with fairness . . .". RCW 34.12.010. Accordingly, pleading in the administrative context is much more flexible than it is in civil court. *Marysville v. Puget Sound Air Pollution Control Agency*, 104 Wn.2d 115, 119, 702 P.2d 469 (1985).

DSHS's argument that a request for financial assistance can only be made on a standard form rather than in a request for adjudicative hearing is without merit. Mrs. Jaquins did fill out a standard form on March 22, 1989. Though RCW

74.08.050 requires applications to be in writing on a standard form, it says nothing about how to interpret the language used in them.

The ALJ in an administrative adjudicative hearing is authorized to "[h]ear and decide the issue anew (de novo)". WAC 388-08-425(1)(a). More significantly, in a hearing on a denied application, the issue "shall be whether the applicant can *in fact* establish his or her *eligibility*." (Italics ours.) WAC 388-38-120(2)(b)(i). By DSHS's own regulations, a welfare applicant is entitled not only to an "opportunity", but a *sufficient* opportunity to make her needs known. WAC 388-38-030(2). The de novo hearing before the ALJ provides this "sufficient opportunity" to raise the issue whether one is in fact eligible for financial assistance, as required by due process.

In this case, the DSHS application form does not specify which programs public assistance comes from, but only asks applicants to check boxes next to "financial help" or "medical help" or "medical emergency". The application form attempts to avoid technicalities; it is intended to be a simple way to assess an applicant's needs. DSHS's argument makes this simplicity an ambiguity. For example, DSHS does not provide the medical assistance; it provides financial assistance to pay for medical treatment rendered by others. The ambiguity was clarified by DSHS itself, in its denial letter, which mentions AFDC (financial assistance) rather than medical assistance. Merely checking a box on this DSHS form does not limit proof of an applicant's needs.

Furthermore, the ALJ ruled that Mrs. Jaquins had sufficiently raised the issue of financial assistance when she mentioned it in her request for adjudicative hearing. This ruling is consistent with due process, WAC 388-08-425(1)(a), WAC 388-38-120(2)(b)(i). We conclude that Mrs. Jaquins raised the issue of financial assistance in her administrative appeal sufficiently to confer jurisdiction on the superior court.

DSHS's argument that Mrs. Jaquins failed to timely appeal denial of an application for financial assistance in 1988 is

without merit. Mrs. Jaquins' application of March 22, 1989, sufficiently raised anew the issue of financial assistance.

DSHS's argument that Mrs. Jaquins lacked standing to apply for financial assistance rests on a false assumption, that RCW 74.12.330 does not entitle minors' legal guardians to receive state-funded financial assistance when they are not "relatives of specified degree". DSHS supports this assumption by arguing (1) the state constitution forbids issuing such financial assistance because there is no specific state appropriation for it; (2) federal law forbids DSHS from disbursing AFDC funds to minors' legal custodians who are not "relatives of specified degree"; and (3) the statute should be construed as implementing, not supplementing, the federal AFDC program.

■ 1. State Constitution. The state constitution does not prohibit expenditures if there is an appropriation for them. The relevant provision states:

> No moneys shall ever be paid out of the treasury of this state, or any of its funds, or any of the funds under its management, except in pursuance of an appropriation by law; . . . and every such law making a new appropriation, or continuing or reviving an appropriation, shall distinctly specify the sum appropriated, and the object to which it is to be applied . . ..

Const. art. 8, § 4. The state budget contained a specific appropriation of $601,519,000 from state general funds for "income assistance" in 1991. Laws of 1991, 1st Sp. Sess., ch. 16, § 211. Contrary to DSHS's assertion, this $600 million is not earmarked only for the AFDC program, but for income assistance programs generally, including those not entitled to federal reimbursement.

The law authorizes DSHS to expend these general funds if expressly authorized by "other law":

> The department of social and health services shall not initiate any services that will require expenditure of state general fund moneys *unless expressly authorized in this act or other law*, or unless the services were provided on March 1, 1991.

(Italics ours.) Laws of 1991, 1st Sp. Sess., ch. 16, § 201(2). Thus, the state constitution does not forbid expenditures of

this kind if RCW 74.12.330 constitutes an authorization by "other law". We discuss that question in issue three below.

■ 2. Federal Law. Although state programs cannot be more restrictive than federal programs, *Berry v. Burdman*, 93 Wn.2d 17, 22, 604 P.2d 1288 (1980), *cert. denied sub nom. Thompson v. Berry*, 451 U.S. 1021 (1981), federal law does not forbid states from supplementing federal programs with state funds. Reimbursement by the federal government is irrelevant if state law mandates payment. *See Maxwell v. Department of Social & Health Servs.*, 30 Wn. App. 591, 636 P.2d 1102 (1981), which involved a similar situation. *Maxwell* ordered DSHS to pay financial assistance even though all parties conceded the federal government would not reimburse the State. Other examples of unreimbursed state supplements exist. First, RCW 74.04.005(6)(a)(ii)(A) extends financial assistance to pregnant women in the first two trimesters of pregnancy, though federal law, 42 U.S.C. § 606(g)(2), limits such payment explicitly to the third trimester. Second, RCW 74.04.005(6)(b)(ii) extends supplemental payments to AFDC recipients whose needs are not met because of temporary reductions in monthly income. The cases DSHS cites from other jurisdictions, which have denied AFDC benefits to guardians, do not involve the same issue: in each, the applicants sought the federal matching funds rather than state funds.

3. Does RCW 74.12.330 implement, or supplement, the federal AFDC program? RCW 74.12.330 provides:

> Notwithstanding the provisions of this chapter [RCW 74.12] a child otherwise eligible for aid shall not be denied such assistance where a relative as specified in the social security act is unavailable or refuses to accept custody and the juvenile court fails to enter an order removing the child from the custody of the parent, relative or guardian then having custody.

■ Courts attempt to give effect to the plain meaning of statutory language. *State v. Sommerville*, 111 Wn.2d 524, 531, 760 P.2d 932 (1988). Courts will read a statute in its entirety, not piecemeal. *Sommerville*; *Donovick v. Seattle-First Nat'l Bank*, 111 Wn.2d 413, 415, 757 P.2d 1378 (1988).

Moreover, when statutory language is plain and unambiguous, its meaning must be derived from the statute alone. *Multicare Med. Ctr. v. Department of Social & Health Servs.*, 114 Wn.2d 572, 582, 790 P.2d 124 (1990).

The meaning of RCW 74.12.330, as it applies to this situation, is plain. RCW 74.12.010 usually authorizes aid only to a dependent child who has been deprived of parental support and falls into one of two categories: (1) the child lives with a relative of specified degree, or (2) a court has removed the child from the home of a relative of specified degree and placed the child in a licensed or approved foster home. However, RCW 74.12.330 provides that *notwithstanding* those facts, a child shall not be denied assistance if (1) such a relative is unavailable or refuses custody; and (2) the juvenile court does not enter an order removing the child from the person *then* having custody. The bar to eligibility DSHS relies on is that Eddie and Adela do not live with a relative of specified degree. However, Eddie and Adela clearly fall within the provisions of RCW 74.12.330. All their relatives are unavailable or refuse custody. They are in the legal custody of Mrs. Jaquins, and no court has entered an order removing them from her.

DSHS's interpretation of the statute suffers from the dualism of looking at the plain language, but trying to make that language "plainer" by construing it with federal statutes and regulations. We are not concerned with interpreting federal statutes; we are concerned with a state statute, which plainly authorizes financial assistance to children who cannot otherwise receive it under the federal program.

We affirm the holding of DSHS's administrative law judge and the Superior Court that RCW 74.12.330 does authorize state-funded financial assistance without regard to federal reimbursement. We hold that Mrs. Jaquins, having court-ordered legal custody of Eddie and Adela, is entitled to financial and medical assistance retroactive to March 30, 1989, as well as reasonable attorney fees incurred in the proceedings below, because she is eligible to apply for and receive such assistance.

Mrs. Jaquins requests attorney fees on appeal pursuant to RAP 18.1. Attorney fees on appeal are authorized by RCW 74.08.080(3)(a). As we have rendered a decision in favor of Mrs. Jaquins, we award her reasonable attorney fees on appeal. The commissioner shall determine the amount of the award pursuant to RAP 18.1(f).

MUNSON and SWEENEY, JJ., concur.