# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON, | No.  48117-1-II |
| Appellant, | |
| v. | |
| ANTHONY ELOY PEREZ, | UNPUBLISHED OPINION |
| Respondent. | |

JOHANSON, J.  —  The State of Washington appeals a trial court order granting Anthony Eloy Perez's motion to dismiss for governmental misconduct and dismissing the charges against Perez.  The State argues that (1) some of the trial court's findings of fact are not supported by substantial evidence and (2) the trial court erred by failing to consider alternative sanctions before dismissing the case.[1]  We hold that (1) substantial evidence supports all but one of the challenged findings of fact, (2) we do not address the remaining challenged finding of fact because the other findings are adequate to support the trial court's governmental misconduct finding, and (3) the trial court erred by failing to consider alternative sanctions before dismissing the case.  Accordingly,

---

[1] The State also argues that (1) the trial court erred in concluding that alleged misconduct was sufficient to support dismissal and (2) dismissal was not an appropriate sanction because the alleged misconduct was not prejudicial.  Because we reverse the dismissal and remand for the trial court to consider other sanctions before dismissing this case, we do not reach these issues.

we affirm the trial court's conclusion that the State engaged in governmental misconduct, but we reverse the trial court's dismissal and remand for the trial court to consider other sanctions.

FACTS

I. BACKGROUND

On March 15, 2015, officers arrested Perez on suspicion of second degree child rape. The officer who initially responded was wearing a body camera and recorded his contact with Perez. The State charged Perez with second degree rape of a child. As of March 17, the State possessed Perez's cell phone, the victim's cell phone, and deoxyribonucleic acid (DNA)-related evidence that was to be analyzed at a forensics lab.

On April 9,[2] the State filed an amended information alleging a "predatory enhancement" related to the second degree rape of a child charge, which enhanced the sentence to 25 years to life. Clerk's Papers (CP) at 47. The amended information also added two additional charges: communication with a minor for immoral purposes and sexual exploitation of a minor.

As of April 9, the Grays Harbor Sheriff's Office was still investigating, and the State was aware that additional evidence would be obtained. This additional evidence included (1) DNA results from swabs collected from Perez and the victim, (2) results of a search warrant for electronic messages between Perez and the victim from a company called "KIK," and (3) the results of a warrant to search cell phones for electronic communications between Perez and the victim. CP at 47. The trial was scheduled for August 4, four days before the expiration of the speedy trial period.

---

[2] Although the State submitted the amended information on April 9, the trial court did not enter an order allowing the amended information to be filed until April 13.

On May 6, defense counsel filed a notice of appearance and a demand for discovery and a list of witnesses. Among the items defense counsel requested were all expert reports or statements, all electronic surveillance, and all information related to any searches or seizures. On May 15, defense counsel followed up his May 6 demand for discovery with a letter "requesting documentation from the 'KIK' Company, any information recovered from the defendant's cell phone, evidence contained on disks, other data recovered from the defendant's computer, and the results of DNA testing." CP at 47. On June 1, the trial court entered an omnibus order ordering the State to produce this evidence and a witness list no later than June 15.

The State failed to produce this evidence by June 15, and it failed to request additional time. The trial court later found that the State had "completely disregarded [Perez's May 15] letter and the Omnibus Order." CP at 47.

On June 22, the State sent the body camera video to the court-appointed attorney who had withdrawn from the case on May 11. The trial court later found that the State did not explain why it had waited three months before making this video available to Perez.

On June 23, Thurston County Detective Tyson Beall completed his examination of the cell phones. Detective Beall's report "describes the contents of three documents on separate disks, which included additional electronic conversations between Mr. Perez and the alleged victim. The three documents were attached by reference to the report." CP at 48. On June 25, the Washington State Crime Laboratory completed the DNA testing.

On July 1, the State finally provided a copy of the body camera footage to Perez. The trial court continued the CrR 3.5 hearing scheduled for that day to July 8 to allow Perez time to view the body camera footage he just received.

3

On July 23, 12 days before the August 4 trial date, and a month after the State received the reports, the State provided Perez with Detective Beall's report and the DNA report. The three disks referred to in Detective Beall's report were not included. The trial court later found that these disks were never provided to Perez.

On July 24, Perez filed a motion to dismiss for governmental misconduct and discovery violations under CrR 4.7 and CrR 8.3. He asserted that the State's failure to provide timely discovery amounted to governmental misconduct and that this misconduct prejudiced him because it forced him to choose between going to trial adequately prepared and his right to a speedy trial.

On July 27, 4 working days before the August 4 trial date, the State provided Perez with an updated DNA report. The next day, the State finally responded in part to the omnibus order by disclosing 16 lay witnesses and 3 expert witnesses. This disclosure was made 43 days after the omnibus order's deadline.

## II. CrR 8.3(b) HEARING AND RULING

At the hearing on Perez's CrR 8.3(b) motion to dismiss, the trial court heard argument from defense counsel and Prosecutor Katherine Svoboda. In addressing the discovery packet Perez received on July 23,[3] the trial court asked Svoboda why it took so long to get this discovery to Perez. Svoboda responded that the assistant prosecutor who was in charge of discovery had been in trial.

Svoboda agreed that the evidence that was most crucial to the enhancement allegation was contained in the discovery that Perez did not receive until July 23, but she commented that she did

---

[3] This packet contained Detective Beall's report and the first set of DNA results.

not think the delay justified "exclusion," let alone a dismissal.[4]  Report of Proceedings (RP) at 16.

Svoboda further acknowledged that new DNA evidence had arrived the day before the CrR 8.3(b)

hearing, but she asserted that Perez could "make a strategic decision to go forward, or take time to

look at the additional information" and that none of the more recent evidence "interject[ed] new

facts or information that was not known to [defense counsel]."  RP at 16.  Svoboda admitted that

she was not aware of whether any information had been obtained from the search warrant issued

for KIK, but she stated that she would check to see if she had received everything that the sheriff's

office had obtained.

After discussing the CrR 8.3(b) motion with counsel, the trial court commented that it had

to carefully consider this motion because this was a serious case and the potential risk to the public

needed to be balanced with ensuring that Perez received effective assistance from counsel who

had a full opportunity to prepare a defense, including an opportunity to evaluate the State's

evidence and possibly seek additional expert opinions.  The trial court did not, however, discuss

whether any sanctions other than dismissal would be appropriate.

The trial court issued written findings of fact and conclusions of law.  The trial court's

findings of fact are set out above.  In addition to the facts set out above, the trial court entered the

following findings of fact:

> 18.    The Court found that the State was not thorough in their review of discovery, diligent in following up with police investigators who evaluated the evidence, and timely in providing evidence to Mr. Perez.
> 19.    As the trial date approached, the State knew critical evidence had not yet been discovered and did not act with reasonable diligence to ensure that the DNA results and the computer forensic examination were provided to Mr. Perez.

---

[4] Svoboda asserted, in part, that the information from the phone searches did not insert any new facts into this case because "Mr. Perez certainly knows what the conversations were."  RP at 15.

5

      20.    The Court is convinced the State ignored this case for weeks as if it was unimportant.

CP at 48.

Based on these findings, the trial court entered the following conclusions of law:

      2.    The Court concluded that the test set forth in *State v. Teems*, 89 Wn. App. 385, 948 P.2d 1336 (1997), should be used to determine if dismissal is an appropriate remedy under CrR 8.3(b). The Court considered whether (a) arbitrary action or government misconduct (b) affected the defendant's right to speedy trial and right of counsel to prepare an adequate defense.

      3.    The evidence requested by Mr. Perez was uniquely within the control of the State and completely beyond the reach of Mr. Perez. The State made no attempt to obtain this evidence in response to the request of Mr. Perez or the mandate of the Omnibus Order. The State took no timely steps to determine the status of the DNA testing or to determine if the cell phone forensic examinations were completed.

      4.    *The State should have provided Mr. Perez copies of any disks containing materials not protected by statute from distribution, i.e., sexual depictions of the victim.*

      5.    The Court finds the State's assertion that it did not receive the May 15, 2015, evidence request from Mr. Perez is not credible. The Court finds the deputy prosecuting attorney handling the case made material misrepresentations to the Court about her knowledge of this letter in open court on July 13, 2015.

      6.    The DNA results had been known by investigators for over a month before they were provided to Mr. Perez and the entirety of the electronic conversations between Mr. Perez and alleged victim were never provided to Mr. Perez.

      7.    The complete failure of the State to provide the discovery required by the Omnibus Order on June 15, 2015, and its failure to act with reasonable diligence to monitor the processing of forensic evidence and to produce evidence in a timely manner, coupled with the unethical conduct of the deputy prosecuting attorney, constitutes prosecutorial misconduct involving bad faith.

      8.    Next, the Court considered whether the government misconduct placed the Mr. Perez in a position where he was forced to choose between effective assistance of counsel and his right to a speedy trial.

      9.    Since the entirety of the discovery, was not provided to Mr. Perez and his right to speedy trial was to expire on August 8, 2015, Mr. Perez's right to a speedy trial was in jeopardy. Trial was set for August 4, 2015.

      10.    *The cell phone contents were crucial evidence in defending the predatory enhancement charge, and the DNA evidence was crucial evidence in establishing that sexual intercourse occurred between the defendant and alleged victim.*

11.     Mr. Perez must have a reasonable opportunity to review all of the evidence prior to trial, to hire experts, and to formulate a defense on his behalf.

12.     The unreasonable delay in disclosing this crucial evidence meant that Mr. Perez would not have adequate time to fully prepare a defense.

13.     The State placed Mr. Perez in a position to choose between his right to a speedy trial and ineffective assistance of counsel.

14.     The Court dismissed all charges against the defendant, Anthony Eloy Perez.

CP at 130-31 (emphasis added).  The trial court then issued an order of dismissal "pursuant to CrR 8.3(b)."[5]  CP at 131.

The State appeals.

ANALYSIS

The State argues that (1) substantial evidence does not support the trial court's findings of fact 18, 19, and 20 and challenges portions of conclusions of law 4 and 10 that are more properly characterized as findings of fact[6] and (2) the trial court erred by failing to consider alternative sanctions before dismissing the case.  We hold that substantial evidence supports all of the challenged findings of fact other than finding of fact 20, but that the remaining findings support

---

[5] The State moved for reconsideration and supported its motion for reconsideration with numerous declarations.  Noting that the State had never asked for additional time to respond to the motion to dismiss or moved to supplement the record, the trial court struck the declarations and denied the motion for reconsideration.  The State does not challenge these decisions on appeal.

[6] Although the State alleges in its assignments of error that "[t]he trial court's findings regarding the discovery process were not supported by substantial evidence," it fails to identify any specific finding until it states in its argument that it is challenging findings of fact 18, 19, and 20 and conclusions of law 4 and 10.  Br. of Appellant at 1.  Nowhere in its argument does the State set out the text of the challenged findings of fact in full.  Although the State's briefing is vague and does not comply with RAP 10.4(g), we address the State's challenges to the findings of fact in the interests of justice.  RAP 1.2(c); *see State v. Neeley*, 113 Wn. App. 100, 105, 52 P.3d 539 (2002).

7

the trial court's governmental misconduct conclusion. We agree, however, that the trial court erred by failing to consider alternative sanctions.

## I. PRINCIPLES OF LAW

CrR 8.3(b)[7] governs a trial court's dismissal of criminal charges due to governmental misconduct. Under CrR 8.3(b), a trial court may dismiss a defendant's charges if the defendant makes two showings. First, the defendant must show arbitrary action or governmental misconduct. *State v. Michielli*, 132 Wn.2d 229, 239, 937 P.2d 587 (1997). Such governmental misconduct "'need not be of an evil or dishonest nature; simple mismanagement is sufficient.'" *Michielli*, 132 Wn.2d at 239-40 (emphasis omitted) (quoting *State v. Blackwell*, 120 Wn.2d 822, 831, 845 P.2d 1017 (1993)). Second, a defendant seeking dismissal under CrR 8.3(b) must also show that such governmental misconduct prejudiced his or her right to a fair trial. *Michielli*, 132 Wn.2d at 240. "Such prejudice includes the right to a speedy trial and the 'right to be represented by counsel who has had sufficient opportunity to adequately prepare a material part of his defense.'" *Michielli*, 132 Wn.2d at 240 (quoting *State v. Price*, 94 Wn.2d 810, 814, 620 P.2d 994 (1980)). Dismissal under CrR 8.3 is an extraordinary remedy, and thus a trial court should consider alternative remedies before resorting to dismissal. *State v. Wilson*, 149 Wn.2d 1, 12, 65 P.3d 657 (2003).

We review a trial court's CrR 8.3(b) dismissal ruling for a manifest abuse of discretion. *Michielli*, 132 Wn.2d at 240. "'Discretion is abused when the trial court's decision is manifestly

---

[7] CrR 8.3(b) provides,
> The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial. The court shall set forth its reasons in a written order.

unreasonable, or is exercised on untenable grounds or for untenable reasons.'" *Michielli*, 132 Wn.2d at 240 (quoting *Blackwell*, 120 Wn.2d at 830). We review a trial court's challenged factual findings for substantial evidence. *State v. Sommerville*, 111 Wn.2d 524, 533-34, 760 P.2d 932 (1988). "Substantial evidence exists if the record contains evidence of sufficient quantity to persuade a fair-minded, rational person of the truth of the declared premise." *Sommerville*, 111 Wn.2d at 534. Unchallenged findings of fact are verities on appeal. *State v. Broadaway*, 133 Wn.2d 118, 131, 942 P.2d 363 (1997).

## II. FINDINGS OF FACT

### A. FINDINGS OF FACT 18 AND 19

The State argues that findings of fact 18 and 19 are not supported by substantial evidence. We disagree.

Finding of fact 18 provides,

> The Court found that the State was not thorough in their review of discovery, diligent in following up with police investigators who evaluated the evidence, and timely in providing evidence to Mr. Perez.

CP at 48. Finding of fact 19 provides,

> As the trial date approached, the State knew critical evidence had not yet been discovered and did not act with reasonable diligence to ensure that the DNA results and the computer forensic examination were provided to Mr. Perez.

CP at 48.

The State argues that substantial evidence does not support the findings that the State was not thorough or diligent in its review of the discovery or that the State failed to follow up with

investigators.[8]  The statements made by Svoboda at the CrR 8.3 hearing and the unchallenged findings support these findings.

The unchallenged findings establish the following:

(1)     The State had been in possession of Perez's cell phone, the victim's cell phone, and the DNA-related evidence since March 17;

(2)     As of April 9, the State was aware that that additional evidence relating to the DNA testing, the results of a search warrant for information from KIK, and the searches of Perez's and the victim's phones were outstanding;

(3)     As of May 15, Perez had requested this evidence;

(4)     A June 1 omnibus order was entered ordering the State to provide the evidence requested in the May 15 letter by June 15;

(5)     The State did not provide this evidence by June 15, failed to request additional time to comply with the omnibus order, and "completely disregarded the defendant's letter and the Omnibus Order," CP at 47;

(6)     The State attempted to make the body camera video available to Perez on June 22, but sent the video to his former counsel who had withdrawn from the case on May 11, and the State did not explain why it took more than three months from the time the State acquired this evidence for it to attempt to provide it to Perez;

(7)     It took the State a month to provide the report on the forensic evaluation of the phone to Perez after the State received the report, and when it did, the three disks that were attached to the report were not included;

(8)     Perez never received the three disks mentioned in the forensic report.

(9)     The State received additional DNA evidence five working days before the trial date.

(10)    The State disclosed 16 lay witnesses and 3 expert witnesses to the defense 4 working days before the trial date and 43 days after the deadline set in the omnibus order.

---

[8] In its argument, the State directs us to a responsive brief in which it asserts it provided an agreed-to timeline.  Although this document was signed by Svoboda on July 27, the filing date on the document is August 13, 2015, the day the State filed its motion for reconsideration.  Thus, it appears that this filing was among the other declarations and attachments that the trial court struck and that it was not before the trial court when it considered Perez's motion to dismiss.  Accordingly, we do not consider this document.

The State also directs us to the declarations it submitted with its motion for reconsideration.  The State fails to acknowledge that the trial court struck these declarations because they contained new information and the State did not ask for additional time to respond to the motion to dismiss or move to supplement the record.  Accordingly, we do not consider these documents.

These findings demonstrate that there was considerable delay between the time law enforcement obtained evidence, when the State received the evidence from law enforcement, and when the State provided this information to Perez. They also show that Perez never received some of the discovery. In addition, these findings demonstrate that the State failed to timely respond to the omnibus order. The only explanation of the delay at the CrR 8.3 hearing was that some of the delay was caused by the assistant prosecutor being in trial—apparently with no one monitoring her desk. And Svoboda's admission that she would have to verify that there was no evidence from the KIK search warrant that the sheriff's office had not forwarded to the State, suggests that as late as four working days before trial the State still did not know for certain whether there was additional outstanding discovery. These unchallenged findings and Svoboda's statements support findings of fact 18 and 19.

## B. Finding of Fact 20

The State next challenges finding of fact 20. Finding of fact 20 states, "The Court is convinced the State ignored this case for weeks as if it was unimportant." CP at 48. Because the other findings are sufficient to support the trial court's governmental misconduct conclusion, we decline to review whether substantial evidence supports this finding.

## C. Conclusions of Law 4 and 10

The State next challenges the trial court's conclusions of law 4 and 10. Because, in the context of the State's arguments, these conclusions of law are more properly characterized as findings of fact, we treat them as findings of fact in this analysis. *State v. Marcum*, 24 Wn. App. 441, 445, 601 P.2d 975 (1979) (statement of fact contained within a trial court's conclusions of law is treated as a finding of fact).

Conclusion of law 4 states, "The State should have provided Mr. Perez copies of any disks containing materials not protected by statute from distribution, i.e., sexual depictions of the victim." CP at 49. The State asserts that it provided Perez with the materials from the disks containing the content of the victim's phone in the initial discovery. But the State does not assert that it provided all of the nonprotected materials from all of the disks. Additionally, the trial court found that the State never provided Perez with the three disks Detective Beall had attached to his report, and the State does not challenge this finding of fact. Accordingly, the State does not show that this conclusion of law was incorrect.

Conclusion of law 10 states,

> The cell phone contents were crucial evidence in defending the predatory enhancement charge, and the DNA evidence was crucial evidence in establishing that sexual intercourse occurred between the defendant and alleged victim.

CP at 50. The State argues only that the cell phone evidence was not "'crucial evidence'" because "all information that was obtainable from the cell phones was given to the defense prior to July 6, 2015." Br. of Appellant at 13. But this argument does not address whether the cell phone evidence was crucial to the case; it merely reiterates the State's claim that it did not fail to provide Perez with this evidence. Thus, the State does not show that this conclusion of law was incorrect.

### III. FAILURE TO CONSIDER OTHER SANCTIONS

The State further argues that the trial court erred when it dismissed the case without considering other sanctions.[9] We agree.

---

[9] Although Perez addresses whether the record supports dismissal as a sanction, he does not address whether the trial court failed to consider other sanctions.

Because dismissal under CrR 8.3(b) is an extraordinary remedy, the trial court should have considered alternative remedies before resorting to dismissal. *Wilson*, 149 Wn.2d at 12. Nothing in the record or the trial court's findings of fact and conclusions of law suggests that the trial court considered other sanctions that would not have infringed on Perez's speedy trial rights, such as excluding the late-disclosed evidence or witnesses.[10] Thus, the trial court erred in dismissing the charges without first examining other possible sanctions.

Accordingly, we affirm the trial court's conclusion that the State engaged in governmental misconduct, but we reverse the trial court's dismissal and remand for the trial court to consider other sanctions.[11]

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

JOHANSON, J.

We concur:

BJORGEN, C.J.

MELNICK, J.

---

[10] Although the State did not aggressively argue for a different sanction, it did mention that exclusion of certain evidence was another option.

[11] Perez asks that we decline to impose appellate costs due to his indigency. Because Perez is the substantially prevailing party, we do not award appellate costs to the State. *See* RAP 14.2.