IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION ONE

| | | |
|---|---|---|
| STATE OF WASHINGTON, DEPARTMENT OF SOCIAL AND HEALTH SERVICES, | ) ) ) ) | No. 73008-8-I |
| Respondent, | ) ) | |
| v. | ) ) | PUBLISHED OPINION |
| ISAAC L. ZAMORA, | ) ) ) | |
| Appellant. | ) | |
| STATE OF WASHINGTON, DEPARTMENT OF CORRECTIONS, | ) ) ) | No. 73090-8-I (Consolidated under No. 73008-8-I) |
| Appellant, | ) ) ) | |
| v. | ) ) | |
| ISAAC L. ZAMORA, | ) ) ) | |
| Respondent. | ) | FILED: March 6, 2017 |

SCHINDLER, J. — In 2009, Isaac L. Zamora pleaded guilty to four counts of

aggravated murder in the first degree. The State stipulated to entry of a plea of not

guilty by reason of insanity to two other counts of aggravated murder in the first degree.

The court ordered Zamora committed to the Washington State Department of Social

and Health Services (DSHS). In 2015, the court granted the DSHS petition to discharge

Zamora from DSHS custody and remanded him to the Washington State Department of

Corrections (DOC) to serve the sentence on four counts of aggravated murder in the first degree. Zamora challenges the order granting the petition to remand him to DOC under a 2013 amendment to RCW 10.77.200(3). Zamora contends the order violates the 2009 plea agreement and due process, the ex post facto and bill of attainder provisions of the federal and state constitutions, and RCW 10.77.200(3) is unconstitutionally vague. In the alternative, Zamora contends DSHS did not meet its burden of proving under RCW 10.77.200(3) that his "mental disease or defect is manageable within a state correctional institution or facility." DOC appeals the court order on the grounds that the court did not have jurisdiction to impose conditions on DOC.[1] We hold the order to remand to DOC did not violate the terms of the plea agreement and due process or the ex post facto and bill of attainder provisions of the federal and state constitutions, and RCW 10.77.200(3) is not unconstitutionally vague. Because DOC was not a party to the proceedings below, the court did not have jurisdiction to impose conditions on DOC. We remand to the superior court to determine whether absent the conditions imposed on DOC, DSHS met its burden under RCW 10.77.200(3).

Criminal Charges

On September 2, 2008, Isaac L. Zamora stole a large knife, rifle, handgun, and ammunition. Zamora shot and killed Chester Rose and Skagit County Sheriff Deputy Anne Jackson. Zamora then shot and killed two construction workers and stole a pickup truck. Zamora drove to a nearby house, crashed into the garage, and shot at

---

[1] Washington State Court of Appeals No. 73090-8-I. We consolidated the two appeals under No. 73008-8-I.

property owner Fred Binschus as he ran away. When Julie Binschus arrived home, Zamora shot and killed her.

After Zamora left the Binschus property, he "rammed" into a vehicle and tried to shoot the driver but the gun malfunctioned. Before driving away, Zamora stabbed the man twice in the chest. On the way to Interstate-5 (I-5), Zamora shot a man riding a motorcycle in the arm.

While driving on I-5, Zamora shot at a car. The bullet passed through the front windows but did not hit the driver or passenger. Zamora then shot through the window of a second vehicle, killing the driver. As Zamora continued to drive south on I-5, he shot at an unmarked Washington State Patrol vehicle. The bullet hit the trooper in the forearm.

The State charged Zamora with six counts of aggravated murder in the first degree, six counts of attempted murder in the first degree, three counts of burglary in the first degree, residential burglary, robbery in the first degree, two counts of theft of a firearm, and unlawful possession of a firearm in the second degree.

2009 Plea Agreement

Zamora entered into a plea agreement. Zamora agreed to plead guilty to four counts of aggravated murder in the first degree, six counts of attempted murder in the first degree, three counts of burglary in the first degree, residential burglary, robbery in the first degree, two counts of theft of a firearm, and unlawful possession of a firearm in the second degree.

The State agreed not to seek the death penalty or file "further charges or sentence enhancements."

> In recognition of the defendant's acceptance of culpability by entry of the pleas of guilty in conjunction with those factors considered in the mitigation package and the opinions of the mental health experts who examined the defendant, his circumstances and his history, the State agrees not to seek the death penalty pursuant to RCW chapter 10.95 for the charges of Aggravated Murder in counts 6, 7, 8, 9, 13 and 18.

The State also stipulated that "as to counts 6 and 7, the counts of Aggravated Murder related to the deaths of Chester Rose and Anne Jackson, . . . the defendant will enter a plea of Not Guilty by Reason of Insanity pursuant to RCW 10.77.060." The State and Zamora agreed to a "Stipulation of Facts" for "purposes of the Court's findings on Acquittal by Reason of Insanity for Counts VI and VII and for purposes of accepting guilty pleas on Counts I - V and VIII - XX." The plea agreement states, "The parties stipulate that the sentencing court may consider the Arrest Warrant Declaration and the Stipulation of Facts, filed separately herein, as the material facts that provide the basis for the plea."

The State and Zamora also stipulated that if the court found Zamora not guilty by reason of insanity, Zamora should be civilly committed to Western State Hospital (WSH).

> The parties further stipulate that the defendant should be committed to Western State Hospital because he presents a substantial danger to person and presents a substantial likelihood of committing criminal acts jeopardizing public safety or security unless kept under further control of other persons or institutions pursuant to RCW 10.77.110(1).

The parties agreed to recommend the court find Zamora not guilty by reason of insanity on the two counts of aggravated murder of Chester Rose and Deputy Anne

Jackson and "concurrent with the entry of judgment and sentence as to the remaining counts," Zamora would be committed to WSH.

> The parties will recommend that the Court follow the agreement that the defendant be found not guilty by reason of insanity as to counts 6 and 7, and that, concurrent with the entry of judgment and sentence as to the remaining counts, the defendant will be committed to Western State Hospital (WSH) based upon that finding and RCW chapter 10.77 (specifically RCW 10.77.120).

The plea agreement states that under State v. Sommerville, 111 Wn.2d 524, 760 P.2d 932 (1988), and RCW 10.77.120, Zamora would be committed to WSH until he is eligible for release and transfer to the Department of Corrections (DOC) to serve the sentence. The plea agreement states, in pertinent part:

> It is further understood by the parties, that based on case law the defendant and the State anticipate that the defendant will be sent to Western State Hospital until such time if any he is eligible for a conditional release and at that time he will be transferred [to] the Department of Corrections for the serving of his sentence in this case. The interpretation of the law that the defendant shall go to Western State Hospital is based on State v. Sommerville, 111 Wash. 2d 524, (1988) and RCW 10.77.120.

In Sommerville, the Washington Supreme Court held that where a court finds a defendant not guilty by reason of insanity on one count but finds the defendant guilty on another count, the prison sentence does not begin until after the defendant is discharged from the Washington State Department of Social and Health Services (DSHS) custody. Sommerville, 111 Wn.2d at 534-36. RCW 10.77.120 states that "persons who are committed . . . as criminally insane" are under the control, care, and treatment of DSHS and shall not be released from the control of DSHS until after a hearing and order of release.

On November 17, 2009, the court held a hearing on the plea agreement. The court found Zamora guilty as charged on all counts except count 6 and count 7. The

court found Zamora not guilty by reason of insanity on counts 6 and 7 and that he should be committed to WSH until the court entered an order remanding him to DOC to serve his sentence. The findings of fact state:

1. The defendant committed the acts alleged in Counts I through XX of the Information; The Court makes the following findings as to those counts based on the attached Stipulation of Facts which is incorporated into this document by reference and also based on the probable cause affidavit previously filed in this case. The defendant agrees that the Court may rely on these two documents in support of its findings. See Exhibits "A" and "B".

2. The defendant was legally insane at the time of the commission of the acts alleged in Counts VI and VII of the Information and is not legally responsible for said acts;

3. There is a substantial danger that the Defendant may injure other persons unless kept under further control by the Court, other persons, or other appropriate institutions;

4. There is a substantial likelihood that the Defendant will commit criminal acts jeopardizing public safety or security unless [k]ept under further control by the Court, other persons, or other appropriate institutions;

5. It is in the best interest of the Defendant and the public that the Defendant, Isaac Zamora, be placed in treatment at the State Mental Hospital at Western State Hospital, Fort Steilacoom, Washington.

The conclusions of law state:

1. That the court has jurisdiction over the parties and subject matter of this cause;

2. That concurrent with entry of Judgment and Sentence as to Counts I-V, VIII - XX, an order should be entered remanding the defendant to the jurisdiction of Western State Hospital for appropriate treatment as being Criminally Insane, pursuant to RCW Chapter 10.77.

3. That pursuant to the agreement of the parties and State v. Sommerville, 111 Wn.2d 524 (1988), the Defendant should be committed to Western State Hospital, and that upon any conditional release that may subsequently be ordered by the Court, he should be

remanded to the custody of the Washington Department of
Corrections to serve any prison term imposed under this cause.

Judgment and Sentence

On November 30, 2009, the court imposed consecutive life sentences without the possibility of parole on four counts of aggravated murder in the first degree. The court found Zamora not guilty by reason of insanity of aggravated murder in the first degree as charged in counts 6 and 7. The court committed Zamora "to the custody of the Department of Social and Health Services as being Criminally Insane pursuant to Chapter 10.77 of the Revised Code of Washington." The "Order of Commitment" states that after entry of a court order to discharge or release Zamora from DSHS, Zamora shall be remanded to DOC to serve the prison sentence. The Order of Commitment states, in pertinent part:

> The defendant shall remain committed with the Department of Social and Health Services as criminally insane subject only to further proceedings of this Court for conditional release and/or final discharge or release. Upon any conditional release and/or final discharge or release subsequently ordered by this Court, the Defendant shall be remanded to the custody of the Washington Department of Corrections to serve the prison term imposed separately in this cause.

On December 2, 2009, Zamora was committed at WSH. In January 2010, WSH psychiatrists wrote a letter to "all interested parties" addressing the necessity of inpatient psychiatric care of Zamora and safety concerns. The letter states Zamora "has no current major mental illness that requires inpatient psychiatric treatment" and the patients and staff at WSH as well as the public and Zamora are "at risk of harm by continuing to house him at this facility, for no clinical reason."

> Mr. Zamora currently presents with only diagnoses of substance abuse, severe character pathology, and threatening behavior stemming purely from his antisocial personality traits. He no longer needs inpatient

psychiatric treatment, and in fact prolonged psychiatric hospitalization only serves to provide a less secure environment in which his antisocial acting-out behaviors are escalating.

Due to his complete lack of any active mental illness symptoms (such as symptoms of a psychotic disorder or a major mood disorder) and lack of need for inpatient level of psychiatric care, Mr. Zamora was decertified as of 12/28/09 [this means that in the opinion of his treating psychiatrists, he no longer met criteria for inpatient hospitalization as of that date]. Were it not for the fact that we lack the legal authority to discharge him, Mr. Zamora would have been discharged weeks ago. He would not meet criteria for civil commitment, since his homicidal threats stem from his personality disorder and not from any major mental illness, and so therefore were it not for his current order binding us from releasing him, he would not remain in the hospital for any psychiatric reason.

Mr. Zamora has no ongoing mental illness and, in our medical opinion, simply presents as a severely psychopathic individual (i.e. with antisocial and narcissistic personality disorder). He has had to be placed in a locked seclusion room since 12/31/09 because of repeatedly making homicidal threats towards Lakewood Police Officers [e.g. "I am a cop killer, don't you know that? I killed that bitch and I would do it a thousand more times. The Lakewood cop better watch out—if he comes back I will take care of him ([patient] made a gun sign with his hand)."] Also, Mr. Zamora was observed by staff studying a map of emergency evacuation routes for the building. . . .

. . . We have stationed hospital Security officers on the ward 24 hours a day, kept Mr. Zamora in seclusion and/or restraints continuously since 12/31/09, and we have also obtained the assistance of the Lakewood Police Department, with an armed Lakewood [Police Department] officer patrolling the grounds outside and inside the unit 24 hours a day since 12/31/09. . . . Nevertheless, our hospital is simply not constructed with sufficient security.[2]

## 2010 Amendments

In March 2010, the legislature amended RCW 10.77.200 to give DSHS the authority to file a petition to release an individual committed to DSHS as criminally

---

[2] First and second alterations in original.

insane. LAWS OF 2010, ch. 263, § 8.[3] Former RCW 10.77.200(2) (2010) states:

> In instances in which persons have not made application for release, but the secretary believes, after consideration of the reports filed under RCW 10.77.060, 10.77.110, 10.77.140, and 10.77.160, and other reports and evaluations provided by professionals familiar with the case, that reasonable grounds exist for release, the secretary may petition the court. If the secretary petitions the court for release under this subsection, notice of the petition must be provided to the person who is the subject of the petition and to his or her attorney.

The legislature also enacted a new statutory provision to give DSHS the authority to place an individual committed as criminally insane "in any secure facility" operated by DSHS or DOC if the person "presents an unreasonable safety risk." RCW 10.77.091 (LAWS OF 2010, ch. 263, § 2). RCW 10.77.091(1) states, in pertinent part:

> If the secretary determines in writing that a person committed to the custody of the secretary for treatment as criminally insane presents an unreasonable safety risk which, based on behavior, clinical history, and facility security is not manageable in a state hospital setting, . . . the secretary may place the person in any secure facility operated by the secretary or the secretary of the department of corrections. . . . The secretary of the department of social and health services shall retain legal custody of any person placed under this section.[4]

## 2011 Progress Report

The WSH September 10, 2011 "progress report" to the court states Zamora does not exhibit "any active symptoms of psychosis" and "many of the challenging behaviors described by his treatment team are primarily due to his anti-social personality disorder,

---

[3] Former RCW 10.77.200(1) (LAWS OF 2000, ch. 94, § 16) stated, in pertinent part:

Upon application by the committed or conditionally released person, the secretary shall determine whether or not reasonable grounds exist for release. . . . If the secretary approves the release he or she then shall authorize the person to petition the court.

"Secretary" means "the secretary of the department of social and health services or his or her designee." RCW 10.77.010(21). The definition has not changed since the statute was enacted in 1973. Laws of 1973 1st Ex. Sess., ch. 117, § 1.

[4] We note the legislature amended RCW 10.77.091 in 2015. LAWS OF 2015, ch. 253, § 1. Because the language quoted above is identical to the language used in RCW 10.77.091(1) in effect in 2010 and the 2015 amendments do not affect our analysis, we cite the current statute.

which is not a mental disease or defect for which the hospital can provide treatment." The report states Zamora "remains an ongoing risk of danger to others." According to the report, "this is a risk which would not be mitigated by his staying at Western State Hospital or being placed on a conditional release that could result in his return to Western State Hospital." Zamora "will no longer be a risk to public safety and security only when he is unconditionally placed in the secure custody of DOC, where he will remain for the rest of his life."

On December 5, 2012, DSHS transferred Zamora to the DOC Monroe Correctional Complex Special Offender Unit (SOU)[5] as authorized by RCW 10.77.091. SOU provided mental health treatment for Zamora in accord with a WSH treatment plan.

2013 Amendment and Petition for Release

In May 2013, the legislature amended RCW 10.77.200(3) to allow the release of an individual committed to DSHS custody as criminally insane if that person "will be transferred to a state correctional institution or facility upon release to serve a sentence for any class A felony" and the "mental disease or defect is manageable within a state correctional institution or facility." LAWS OF 2013, ch. 289, § 7. RCW 10.77.200(3) states, in pertinent part:

> If the person who is the subject of the petition will be transferred to a state correctional institution or facility upon release to serve a sentence for any class A felony, the petitioner must show that the person's mental disease or defect is manageable within a state correctional institution or facility, but must not be required to prove that the person does not present either a substantial danger to other persons, or a substantial likelihood of committing criminal acts jeopardizing public safety or security, if released.

---

[5] The SOU is a DOC mental health treatment facility.

DSHS Petition

On December 6, 2013, DSHS filed a petition under RCW 10.77.200(3) to remand Zamora to DOC custody. The petition states that since December 5, 2012, Zamora had been housed at the SOU, "a mental health treatment facility at the Monroe Correctional Complex."

> Since becoming a boarder at the Special Offender Unit, Mr. Zamora has continued to receive mental health treatment pursuant to a treatment plan overseen by the Western State Hospital Medical Director and implemented by treatment providers in the Special Offender Unit.

The petition states the WSH Risk Review Board determined Zamora's "mental disorders are manageable" within DOC and the structure provided in DOC custody "is more likely to meet the overall needs of Mr. Zamora."

> The Western State Hospital Risk Review Board reviewed Mr. Zamora's current status and concluded that Mr. Zamora's mental disorders are manageable within a Department of Corrections institution or facility, and that the structure provided in Department of Corrections custody is more likely to meet the overall needs of Mr. Zamora. The Public Safety Review Panel reviewed this recommendation and supports the decision to petition for release and final discharge (See Exhibit 1).

The Washington State Public Safety Review Panel agreed with the recommendation to discharge Zamora from DSHS custody. The recommendation states, in pertinent part:

> Mr. Zamora has resided at Monroe Corrections Complex, Special Offender Unit since December of 2012. All reports indicate that he has been actively participating in treatment and is generally compliant with the rules with no major infractions. It is apparent that the DOC facilities are better prepared than the Hospital to contain dangerousness for future violence related to Mr. Zamora's longstanding Antisocial Personality Disorder. The Panel also observed that, should at some point in the future Mr. Zamora were to experience a relapse of psychotic symptoms, DOC has both licensed professional mental health staff and specialized facilities to address such needs. A final discharge from DSHS to DOC would not jeopardize public safety or security in any way.

Zamora filed a motion to dismiss the DSHS petition. Zamora argued he had a vested right under the 2009 version of the statute and the petition violated the plea agreement and due process and the ex post facto clause and prohibition against bills of attainder.[6] Zamora also argued RCW 10.77.200(3) was impermissibly vague. The court denied the motion to dismiss the petition. The court rejected the argument that Zamora had a vested right or that the petition under RCW 10.77.200(3) violated the plea agreement and due process, the ex post facto clause, or the prohibition against bills of attainder.

> Mr. Zamora does not have a vested right to remain indefinitely at WSH, under the earlier version of RCW 10.77.200. Mr. Zamora entered into his plea agreement knowingly, intelligently, voluntarily, and upon the advice of professional legal counsel. The subsequent amendment to RCW 10.77.200(3) does not defeat the reasonable expectations of the parties. Mr. Zamora understood that he could be released from DSHS custody and that, upon release, he would be remanded to the custody of DOC to serve his sentence for the convictions to which he pleaded guilty. Therefore, the application of RCW 10.77.200(3) to Mr. Zamora does not violate his right to due process.
>
> . . . .
> . . . The Legislature did not intend to alter the civil nature of RCW 10.77.200(3), nor did it intend to effect punishment on Mr. Zamora. Further, the statute does not impose punishment for an act that was not punishable when committed, or inflict greater punishment than could have been imposed at the time it was committed—RCW 10.77.200(3) does not change Mr. Zamora's sentence for the first-degree aggravated murder charges to which he pleaded guilty. Therefore, RCW 10.77.200(3) does not violate the ex post facto clause of the United States and Washington State Constitutions.
> . . . For similar reasons, RCW 10.77.200(3) does not violate the prohibition against legislative bills of attainder under the United States and Washington State Constitutions. As set forth above, the statute does not apply to Mr. Zamora only, and it does not inflict punishment on him. Further, Mr. Zamora continues to have the right to a judicial proceeding to

---

[6] Zamora also argued the petition violated equal protection.

determine whether or not he should be released from DSHS custody. Therefore, RCW 10.77.200(3) does not create a bill of attainder.[7]

The court rejected the argument that RCW 10.77.200(3) was impermissibly vague.

> Because the term "manageable" is not incapable of definition, it is not unconstitutionally vague. . . . Mr. Zamora has not proven beyond a reasonable doubt that RCW 10.77.200(3) is unconstitutionally vague.

The court held a three-day evidentiary hearing on the petition to release Zamora from DSHS custody under RCW 10.77.200(3). DSHS presented the testimony of WSH Medical Director and psychiatrist Dr. Brian Waiblinger, SOU staff psychiatrist Dr. Steven Jewitt, SOU psychologist Dr. Cynthia Goins, and DOC Chief of Psychiatry Dr. Bruce Gage.

Dr. Waiblinger testified Zamora "has a serious mental illness" but he had made significant progress in controlling his symptoms and was taking less medication. Dr. Waiblinger stated DOC can "clearly" treat individuals "with serious psychiatric and personality disorder symptoms" and he had "no doubt" DOC could provide for Zamora's "mental health needs."

---

[7] The court also ruled RCW 10.77.200(3) did not violate equal protection. Rational basis review is the standard by which RCW 10.77.200(3) is reviewed for an equal protection challenge. First, RCW 10.77.200(3) does not apply to Mr. Zamora only; it applies to the entire class of patients who enter into a plea agreement with concurrent NGRI [(not guilty by reason of insanity)] and guilty pleas, as well as NGRI patients who are convicted of a class A felony following placement in DSHS custody. Second, there is a rational basis for treating this class of NGRI patients differently than other NGRI patients because the circumstances following release are substantially different. Third, the classification is rationally related [to] the purpose of the statute. RCW 10.77.200 discourages defendants from entering into similar plea agreements based on an assumption that they will never serve their criminal sentence. Additionally, authorizing DOC to take into custody this class of persons helps protect public safety while also ensuring that state hospital resources are utilized for those who actually require them. For these reasons, RCW 10.77.200(3) does not violate Mr. Zamora's right to equal protection.

Dr. Jewitt testified Zamora was following the same medication regimen at SOU. Dr. Jewitt testified that DOC has a great deal of experience with inmates with Zamora's level of symptoms and compared to other inmates, Zamora was not "a management problem." Dr. Jewett states Zamora has "followed our rules, you know, generally and behaved, and it has worked. And, you know, I see it as someone who over time would . . . try to get better."

Dr. Goins testified Zamora had made good progress while at the SOU. Dr. Goins said there were other individuals at SOU with more significant mental illness than Zamora. Dr. Gage testified that he had no concerns "whatsoever" about the ability of DOC to "manage Isaac Zamora's mental health needs."

Zamora presented the testimony of psychiatrist Dr. Sally Johnson. In Dr. Johnson's opinion, Zamora suffered from paranoid schizophrenia and "[p]ersonality disorder not otherwise specified with paranoid borderline antisocial features" that will "always have to be monitored heavily."

> He unfortunately has a delusional system that we already know was intimately connected to very dangerous, heinous behavior, and so it still exists. And I think that the risk management for Mr. Zamora is extremely important for everybody's sake and for Mr. Zamora's sake. This is not anything to take lightly or to think, you know, was it a temporary problem or situational. This is something that will always have to be monitored heavily.

But Dr. Johnson told the court, "I don't want you to hear that my concern is such that I'm hopeless about his being able to manage these things." Dr. Johnson testified Zamora was doing well at SOU and the level of care he received was appropriate. However, Dr. Johnson expressed the concern that as he improves, Zamora could be

"move[d] to the back of the line."

> I'm not necessarily concerned with acuity as I am severity. And Mr. Zamora has a very severe illness. He may be partially compensated now from some of those illnesses, depression, and treatment. But this is not a lightweight mental illness in any way, shape, or form. That's the thing I'm worried about. There are systems that are busy that have people lined up, coming in the door. The acuity is like are you about to kill yourself today? Those are the people who move to the front of the line. And people like Mr. Zamora, even with his history can move to the back of the line.

The court granted the petition for release from DSHS custody and remand to DOC. However, the court expressed the concern that "at some point," Zamora would be "on the back burner." The court said that releasing Zamora from DSHS to DOC custody was "contingent" on Zamora remaining in the SOU unless two psychiatrists involved in his care jointly recommended transfer to another DOC facility and DOC assigned a psychiatrist to be responsible for monitoring Zamora's care.

> So I would remand Mr. Zamora to the Department of Corrections, again, contingent with him remaining at SOU until the recommendation changes by the two psychiatrists who were involved in Mr. Zamora's case. And that one of the psychiatrists at the Department of Corrections, I would suggest Dr. Jewitt or Dr. Goins, be Mr. Zamora's primary psychiatrist and have the direct contact with Mr. Zamora. That's not a therapist. That's just a treating psychiatrist. I don't know whether you call it a treating psychiatrist or whatever you want to use. But I want a psychiatrist appointed to Mr. Zamora on his case. So there is this overlay monitoring that [Dr.] Waiblinger and the others who have been doing it so that Mr. Zamora doesn't fall off the front burner and goes to the back burner.

Zamora's attorney told the court that it did not have the authority to impose conditions on DOC.

> Well, I guess the problem I see, Your Honor, is the Court certainly doesn't have any statutory authority to regulate what occurs at the Department of Corrections. What the Court has authority to do is to either grant the petition or deny the petition and remand him to DOC custody.

The court ruled, "Well, I'm going to grant the petition to remand, but I'm going to put

[into] it those conditions, and we'll see what happens."

DOC filed a special appearance to oppose the imposition of the conditions. DOC argued that because DOC was not a party to the proceedings, the court did not have jurisdiction to impose conditions on DOC. The court disagreed and imposed conditions on DOC.

The order granting the petition states, "Mr. Zamora's mental illness is manageable within a state correctional institution or facility." The court ordered Zamora "released from the custody of DSHS and remanded to the custody and control of DOC to serve his four life sentences" subject to the imposition of conditions on DOC. The written findings of fact and conclusions of law state, in pertinent part:

> The Court heard testimony from DOC mental health staff responsible for Mr. Zamora's treatment at SOU (Steven P. Jewitt, M.D., Cynthia Goins, PhD.,), DOC's Chief of Psychiatry (Bruce C. Gage, M.D.), DSHS's Western State Hospital Medical Director (Brian Waiblinger, M.D.), and a psychiatrist retained by Mr. Zamora's counsel (Sally Johnson, M.D.). These experts agree, and their testimony establishes the following: (1) Mr. Zamora continues to suffer from a serious mental illness; (2) Mr. Zamora has not been a management problem during his 20 months at SOU; (3) DOC has cared for Mr. Zamora's [sic] appropriately during his 20 months at SOU; and (4) Mr. Zamora has responded better to treatment at the SOU than he did while at Western State Hospital.
>
> . . . .
> . . . Once in the custody of DOC, Mr. Zamora will remain in the SOU and not to be transferred until two psychiatrists who have worked with him jointly recommend that he be transferred somewhere out of the SOU. DOC will also appoint a psychiatrist to be responsible for monitoring Mr. Zamora's care.

Zamora's Appeal

Zamora contends the order granting the petition under RCW 10.77.200(3) violates the plea agreement and due process and the ex post facto clause and prohibition against bills of attainder. Zamora also asserts RCW 10.77.200(3) is

unconstitutionally vague.[8] We review constitutional issues and questions of law de novo. State v. MacDonald, 183 Wn.2d 1, 8, 346 P.3d 748 (2015); State v. Neisler, 191 Wn. App. 259, 265, 361 P.3d 278 (2015).

"A plea agreement is a contract between the State and the defendant." MacDonald, 183 Wn.2d at 8.[9] Because a plea agreement affects the fundamental rights of the accused, due process is implicated. State v. Sledge, 133 Wn.2d 828, 839, 947 P.2d 1199 (1997); In re Pers. Restraint of Lord, 152 Wn.2d 182, 189, 94 P.3d 952 (2004). Due process requires the State to " 'adhere to the terms of the agreement.' " MacDonald, 183 Wn.2d at 8 (quoting Sledge, 133 Wn.2d at 839); Santobello v. New York, 404 U.S. 257, 265, 92 S. Ct. 495, 30 L. Ed. 2d 427 (1971).

In construing a plea agreement, we apply the principals of contract law. State v. Turley, 149 Wn.2d 395, 400, 69 P.3d 338 (2003); State v. Oliva, 117 Wn. App. 773, 779, 73 P.3d 1016 (2003). We use an objective standard to determine whether the State breached a plea agreement. MacDonald, 183 Wn.2d at 8. "We look only to objective manifestations of intent, not unexpressed subjective intent." State v. Chambers, 176 Wn.2d 573, 581, 293 P.3d 1185 (2013); Turley, 149 Wn.2d at 400.

Zamora contends the plea agreement "guaranteed a certain legal framework would apply and procedural safeguards would protect him from being sent to prison when he remained substantially dangerous to himself or others due to his mental illness." The plea agreement does not support his argument.

---

[8] Zamora does not challenge placement at DOC under the statute enacted in 2010, RCW 10.77.091, or argue he has a vested right or RCW 10.77.200(3) violates equal protection.

[9] DSHS does not argue it is not bound by the plea agreement.

The State fulfills its obligations under a plea agreement if it "acts in good faith and does not contravene the defendant's reasonable expectations that arise from the agreement." State v. McInally, 125 Wn. App. 854, 861-62, 106 P.3d 794 (2005); State v. McRae, 96 Wn. App. 298, 305, 979 P.2d 911 (1999). A defendant is not entitled to rely on the expectation that the law in effect at the time of the plea agreement will not change. McRae, 96 Wn. App. at 305; see State v. Hennings, 129 Wn.2d 512, 528, 919 P.2d 580 (1996). As previously noted, Zamora does not argue on appeal that the plea agreement created a vested right. Hennings, 129 Wn.2d at 528 (A vested right entitled to due process protection " 'must be something more than a mere expectation based upon an anticipated continuance of the existing law.' ")[10] (quoting Caritas Servs., Inc. v. Dep't of Social & Health Servs., 123 Wn.2d 391, 414, 869 P.2d 28 (1994)).

Here, the plea agreement states that under Sommerville and RCW 10.77.120, the parties understood Zamora would be sent to WSH "until such time if any he is eligible for a conditional release and at that time he will be transferred [to] the Department of Corrections for the serving of his sentence." The citation to Sommerville and RCW 10.77.120 does not support Zamora's argument that he would remain in DSHS custody until he was no longer dangerous to himself or others. Sommerville stands only for the proposition that Zamora would be committed to WSH before remand to DOC to serve his sentence. In Sommerville, the Supreme Court held that when an individual is found guilty of some charges and not guilty by reason of insanity on other charges, the individual must be remanded to the custody of DSHS until final discharge to DOC to serve his sentence. Sommerville, 111 Wn.2d 534-36. RCW 10.77.120

---

[10] Emphasis in original, internal quotation marks omitted.

states that a person committed to DSHS as criminally insane shall not be released from the control of DSHS until after a hearing and court order of release. The only reference to release from DSHS and remand to DOC states that "both parties shall have notice and an opportunity for a hearing" before entry of an order of release from DSHS and remand to DOC. There is no dispute that Zamora had notice and the opportunity to participate in the hearing on the DSHS petition for release.

The plea agreement does not address the length of time Zamora would remain at WSH or the criteria for discharge from DSHS custody and remand to DOC to serve his sentence. The plea agreement unequivocally states there is no guarantee concerning the "length of time" Zamora remains at WSH. And Zamora agreed the length of time he remains at WSH is not a basis to collaterally attack the plea agreement. The plea agreement states, in pertinent part:

> It is further understood by the parties, there is no guarantee how long the defendant might remain at Western State Hospital and that the length of time that the defendant remains at Western State Hospital is not a basis to permit the defendant to seek to withdraw the guilty plea or plea of not guilty by reason of insanity or otherwise voiding or collaterally attacking the plea and sentence herein.

We conclude the petition to remand to DOC under RCW 10.77.200(3) did not breach the plea agreement or violate Zamora's right to due process.[11]

Zamora asserts the decision to grant the petition under RCW 10.77.200(3) violates the ex post facto clause and the prohibition against bills of attainder. We review a claim that the application of the law violates the constitutional prohibition against ex post facto laws and the prohibition against bills of attainder de novo. In re Pers.

---

[11] In his statement of additional grounds, Zamora claims his attorney provided ineffective assistance of counsel. Because the claim requires evidence and facts not it the record, we cannot address his argument. State v. McFarland, 127 Wn.2d 322, 335, 899 P.2d 1251 (1995).

19

Restraint of Flint, 174 Wn.2d 539, 545, 277 P.3d 657 (2012); see also State v. Samalia, 186 Wn.2d 262, 269, 375 P.3d 1082 (2016).

The United States Constitution and the Washington Constitution prohibit ex post facto laws and bills of attainder. U.S. CONST. art. I, § 9 ("No bill of attainder or ex post facto law shall be passed."); WASH. CONST. art. I, § 23 ("No bill of attainder[ or] ex post facto law . . . shall ever be passed.").[12]

The ex post facto clause prohibits the application of laws that "retroactively alter the definition of crimes or increase the punishment for criminal acts." Collins v. Youngblood, 497 U.S. 37, 43, 110 S. Ct. 2715, 111 L. Ed. 2d 30 (1990); see also In re Pers. Restraint of Hinton, 152 Wn.2d 853, 861, 100 P.3d 801 (2004) ("A law that imposes punishment for an act that was not punishable when committed or increases the quantum of punishment violates the ex post facto prohibition."); accord Carmell v. Texas, 529 U.S. 513, 521-22, 120 S. Ct. 1620, 146 L. Ed. 2d 577 (2000) (citing Calder v. Bull, 3 U.S. 386, 390, 1 L. Ed. 648 (1798)).

"The ex post facto prohibition applies only to laws inflicting criminal punishment." State v. Ward, 123 Wn.2d 488, 499, 869 P.2d 1062 (1994).[13] "[N]o ex post facto violation occurs if the change in the law is merely procedural and does 'not increase the punishment, nor change the ingredients of the offence or the ultimate facts necessary to establish guilt.' " Miller v. Florida, 482 U.S. 423, 433, 107 S. Ct. 2446, 96 L. Ed. 2d 351 (1987)[14] (quoting Hopt v. Utah, 110 U.S. 574, 590, 4 S. Ct. 202, 28 L. Ed. 262 (1884)).

---

[12] Zamora does not argue an independent state constitutional analysis of the ex post facto clause of the Washington State Constitution is necessary. State v. Pillatos, 159 Wn.2d 459, 475 n.7, 150 P.3d 1130 (2007).

[13] Emphasis omitted.

[14] Italics omitted.

A legislative act that applies "in such a way as to inflict punishment" on an individual or group "without judicial trial" violates the prohibition against bills of attainder. Hennings, 129 Wn.2d at 527.

To prevail on his ex post facto claim, Zamora must show RCW 10.77.200(3) "operates retroactively, i.e., it applies to conduct that was completed before the law was enacted, and that the challenged law increases the penalty over what it was at the time of the conduct." Flint, 174 Wn.2d at 545; see also State v. Pillatos, 159 Wn.2d 459, 475, 150 P.3d 1130 (2007); Johnson v. United States, 529 U.S. 694, 699, 120 S. Ct. 1795, 146 L. Ed. 2d 727 (2000); In re Pers. Restraint of Dyer, 164 Wn.2d 274, 293, 189 P.3d 759 (2008).

As a general rule, a statutory amendment applies prospectively. In re Pers. Restraint of Stewart, 115 Wn. App. 319, 332, 75 P.3d 521 (2003); Landgraf v. USI Film Prods., 511 U.S. 244, 264-66, 114 S. Ct. 1522, 128 L. Ed. 2d 229 (1994); State v. T.K., 139 Wn.2d 320, 329, 987 P.2d 63 (1999); State v. Blank, 131 Wn.2d 230, 248, 930 P.2d 1213 (1997). The prospective application of a statute occurs "when the event that triggers or precipitates operation of the statute takes place after its enactment." Flint, 174 Wn.2d at 547; Blank, 131 Wn.2d at 248. A statute "has retroactive effect if it takes away or impairs a party's vested rights acquired under existing laws" and "increases liability for past conduct or imposes new duties or disabilities with respect to completed transactions." Flint, 174 Wn.2d at 547-48.

It is well established that a statute does not operate retroactively merely because the "triggering event originates in a situation that existed before the statute was enacted." Flint, 174 Wn.2d at 547; Blank, 131 Wn.2d at 248. "Nor does a statute

21

operate retrospectively just because it upsets expectations based on prior law." Flint, 174 Wn.2d at 547. In determining whether a statute operates prospectively or retroactively, we " 'ask whether the new provision attaches new legal consequences to events completed before its enactment.' " Flint, 174 Wn.2d at 547[15] (quoting Pillatos, 159 Wn.2d at 471).

We hold the decision to grant the petition to release Zamora from DSHS custody and remand to DOC under RCW 10.77.200(3) does not violate the ex post facto clause or the constitutional prohibition against bills of attainder. The statute is procedural and does not inflict punishment. Because the triggering event is filing the petition to remand Zamora to DOC, RCW 10.77.200(3) does not apply retroactively.

Zamora also contends RCW 10.77.200(3) is unconstitutionally vague because the statute does not provide standards to determine whether a "person's mental disease or defect is manageable" within DOC. We review whether a statute is unconstitutionally vague de novo as a question of constitutional law. State v. Watson, 160 Wn.2d 1, 5, 154 P.3d 909 (2007).

The Fifth Amendment provides that "[n]o person shall be . . . deprived of life, liberty, or property, without due process of law." U.S. CONST. amend. V. The vagueness doctrine ensures laws provide notice and clear standards to prevent arbitrary enforcement. Johnson v. United States, ___ U.S. ___, 135 S. Ct. 2551, 2556, 192 L. Ed. 2d 569 (2015); In re Det. of LaBelle, 107 Wn.2d 196, 201, 728 P.2d 138 (1986). "The purpose of this doctrine is to 'provide fair notice to citizens as to what conduct is proscribed and to protect against arbitrary enforcement of the laws.' " In re

---

[15] Internal quotation marks omitted.

Det. of M.W., 185 Wn.2d 633, 661, 374 P.3d 1123 (2016) (quoting City of Seattle v. Eze, 111 Wn.2d 22, 26, 759 P.2d 366 (1988)).

The party challenging a law as void for vagueness bears the heavy burden of proving it is unconstitutional. M.W., 185 Wn.2d at 661. "The standard for finding a statute unconstitutionally vague is high." Watson, 160 Wn.2d at 11. We presume the statute is constitutional and the party challenging the statute bears the burden of proving beyond a reasonable doubt that it is unconstitutionally vague. State v. Bahl, 164 Wn.2d 739, 753, 193 P.3d 678 (2008); Watson, 160 Wn.2d at 11.

"In any vagueness challenge, the first step is to determine if the statute in question is to be examined as applied to the particular case or to be reviewed on its face." City of Spokane v. Douglass, 115 Wn.2d 171, 181, 795 P.2d 693 (1990). It is well established that a vagueness challenge to a statute that does not involve First Amendment rights must be applied to the particular facts of the case. Maynard v. Cartwright, 486 U.S. 356, 361, 108 S. Ct. 1853, 100 L. Ed. 2d 372 (1988); Douglass, 115 Wn.2d at 182; see U.S. CONST. amend. I.

Zamora fails to meet his burden of proving the statute is unconstitutional beyond a reasonable doubt. Whether Zamora's mental disease or defect is manageable under RCW 10.77.200(3) is a question of fact. Below, the court ruled, "[T]he term 'manageable' is not incapable of definition." We agree with the court. Where a statute does not define a term, "a court may rely on the ordinary meaning of the word as stated in a dictionary." State v. Klein, 156 Wn.2d 102, 116, 124 P.3d 644 (2005). The dictionary defines "manageable" as "capable of being managed : submitting to control."

WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 1372 (2002). RCW 10.77.200(3) is not unconstitutionally vague.

DOC's Appeal

DOC filed an appeal as an aggrieved party under RAP 3.1. DOC challenges the imposition of the conditions in the order granting the DSHS petition under RCW 10.77.200(3). The order states, in pertinent part:

> Once in the custody of DOC, Mr. Zamora will remain in the SOU and not to be transferred until two psychiatrists who have worked with him jointly recommend that he be transferred somewhere out of the SOU. DOC will also appoint a psychiatrist to be responsible for monitoring Mr. Zamora's care.

DOC argues that because the court did not have personal jurisdiction over DOC, it erred by imposing the conditions. DOC also argues the court does not have the authority to direct management of Zamora at DOC. We agree.

Where, as here, the facts relevant to jurisdiction are undisputed, we review a trial court's assertion of personal jurisdiction de novo. Pruczinski v. Ashby, 185 Wn.2d 492, 499, 374 P.3d 102 (2016). We review a challenge to the authority of the court de novo. State v. Armendariz, 160 Wn.2d 106, 110, 156 P.3d 201 (2007).

A court does not have personal jurisdiction over a party if the individual or entity is not designated as a party and has not been made a party by service of process. Martin v. Wilks, 490 U.S. 755, 761, 109 S. Ct. 2180, 104 L. Ed. 2d 835 (1989); City of Seattle v. Fontanilla, 128 Wn.2d 492, 502, 909 P.2d 1294 (1996); State v. G.A.H., 133 Wn. App. 567, 576, 137 P.3d 66 (2006). If a court lacks personal jurisdiction over a party, any order entered against that party is void. State v. Breazeale, 144 Wn.2d 829, 841, 31 P.3d 1155 (2001); Marley v. Dep't of Labor & Indus., 125 Wn.2d 533, 541, 886

24

P.2d 189 (1994); G.A.H., 133 Wn. App. at 576. Because the undisputed record establishes DOC was not designated as a party and was not made a party by service of process, the court did not have jurisdiction to impose conditions on DOC. In addition, the superintendent of each correctional institution is "responsible for the supervision and management of . . . the prisoners committed, admitted, or transferred to the institution." RCW 72.02.045(1).

Burden of Proof under RCW 10.77.200(3)

Zamora contends DSHS did not meet its burden under RCW 10.77.200(3) of proving that his mental defect is manageable within DOC. The unchallenged testimony and findings establish Zamora had not been a management problem during his 20 months at SOU and was doing better than he had been at WSH. However, the court ruled the decision to grant the petition to release Zamora from DSHS custody was contingent on the conditions imposed on DOC. Because the court did not have jurisdiction to impose conditions on DOC, we remand. On remand, the court shall determine whether absent the conditions on DOC, Zamora's "mental disease or defect is manageable within a state correctional institution or facility" under RCW 10.77.200(3).

In sum, we conclude the petition for release from DSHS custody under RCW 10.77.200(3) did not violate the plea agreement and due process, the ex post facto clause or the prohibition against bills of attainder, and the statute as applied is not impermissibly vague. But we remand to determine whether absent the conditions

imposed on DOC, DSHS met its burden under RCW 10.77.200(3) of proving that Zamora's mental disease is manageable within DOC.

Schindler, J

WE CONCUR:

Trickey, ACJ

Spearman, J.