IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| In the Matter of the Personal Restraint of<br><br>KEVIN SCOTT GRIFFITH, SR.,<br><br>               Petitioner. | No. 85854-8-I<br><br>DIVISION ONE<br><br>UNPUBLISHED OPINION |

SMITH, J. — Kevin Griffith, Sr., is currently serving life without the possibility of parole pursuant to a 2017 judgment and sentence. Griffith's original judgment did not allow visitation or contact with minors. In 2022, the trial court amended the judgment and sentence to allow Griffith visitation with his minor son, K.G.J., "when supervised by an adult who has knowledge of this conviction." Griffith submitted an application for visitation with K.G.J. to the Department of Corrections. The Department denied Griffith's application. In 2023, Griffith and his son initiated this personal restraint petition (PRP), contending the Department deprived them of their fundamental right to familial privacy. We conclude the Department's denial of Griffith's application was based on a thorough review of the record and was not a violation of their statutory authority nor arbitrary and capricious; therefore, we deny the petition.

FACTS

In 2017, Kevin Griffith, Sr., was convicted of molestation in the first degree of his five-year-old daughter. Griffith had two prior felony convictions, including

one for rape of a child in the first degree, which resulted in the court finding he was a persistent offender and sentencing him to life without the possibility of parole (LWOP). The judgment and sentence (J&S) issued by the court contained a "no contact" provision stating Griffith was to have no contact with "[a]ny minors without supervision of a responsible adult who has knowledge of this conviction." The J&S also included Appendix H – Sex Offenses Community Custody, which contained a crime-related provision stating Griffith was to "[h]ave no direct/or indirect contact with minors." The community custody conditions were effective beginning "the date of sentencing."

In April 2017, Griffith's mother, Candace Griffith, submitted a visitation application on behalf of Griffith's son, K.G.J., who was six years old. The Department of Corrections denied the application in May 2017 because the J&S included conditions precluding contact, including visitation, with minors. Candace[1] submitted another request in August 2017, which was denied for the same reason. Candace appealed, and the appeal was denied. Candace submitted a third visitation application in December 2019, which was also denied. Candace appealed, and in August 2020, the Visit Multidisciplinary Team (VMDT) considered the appeal. The VMDT reviewed Griffith's record, including previous offenses, and Griffith's presentence investigation report, which stated Griffith "has deviant fantasies around minor child [sic] and one recent fantasy was him having sex with a minor male." Based on this information, as well as the J&S

---

[1] Because Kevin Griffith and Candace Griffith share the same last name, we refer to Candace Griffith by her first name.

stating Griffith "shall have no contact, direct or indirect, in person, in writing, by telephone, or through third parties with . . . [a]ny minors without supervision of a responsible adult who has knowledge of this conviction," the VMDT determined "Griffith has a deviant arousal system that includes arousal to force and coercion with both male and female children," and denied the appeal.

In July 2022, the Department intercepted inbound messages from Griffith's mother with images of K.G.J. and outbound messages from Griffith to K.G.J. with photos of himself and letters signed "love dad."  The messages also detailed a video visit between Griffith and K.G.J.  The Department issued an infraction to Griffith for violating the no contact provisions of his J&S.

In August 2022, Griffith moved to modify his J&S to allow visitation with K.G.J.  The court granted the motion in December 2022, and amended the no contact provision and community custody condition to state, "visitation with the defendant's minor son, [K.G.J.], is permitted when supervised by an adult who has knowledge of the conviction."  All other provisions remained unchanged.  In January 2023, Candace submitted a new visitation application for K.G.J.  The VMDT met in August 2023, to consider the application.  The Department denied the application.  The following statements were included in the team notes regarding the denial:

> [Department of Children, Youth and Families] reviewed the guardianship paperwork that was provided and stated that Candace Griffith has limited guardianship and looks handwritten by Candace.
>
> Griffith has sexual arousal to males and has had a fantasy of having intercourse with a male recently (Per SOTAP/ PSI).
>
> Griffith has multiple offenses and refuses to participate in treatment.

3

718 infraction is concerning due to forging of documents to get a no contact order dropped as well as J&S violation concerns. (No contact with minors prior to the amended J&S.)

In the denial letter to Candace, the Department also indicated that Candace "assisted in providing third party contact between Mr. Griffith and minors while there was an active no contact with minors condition in Mr. Griffith's J&S." Griffith initiated this PRP alleging the Department deprived him of his fundamental right of familial privacy.

ANALYSIS

Griffith contends the Department overstepped its authority and impinged on his fundamental right to familial privacy when it denied him visitation with his minor son, K.G.J. The Department maintains Griffith does not have an unfettered right to visitation with K.G.J., and it had authority to deny Griffith's visitation request. We agree with the Department.

Personal Restraint Petition

Griffith included his minor son, K.G.J., as a co-petitioner in the PRP, alleging the Department has violated both his and K.G.J.'s constitutional rights. The Department contends K.G.J. is not under restraint and cannot obtain relief in a PRP.

An individual may commence a PRP to seek relief from unlawful restraint. RAP 16.4. An individual is under restraint if they are confined "because of a court decision in a civil or criminal proceeding." RAP 16.4. Restraint is unlawful when the court did not have jurisdiction to enter an order or the conditions of

4

restraint "are in violation of the Constitution of the United States or the Constitution or laws of the State of Washington." RAP 16.4.

Here, K.G.J. is not restrained, nor is he a party to Griffith's criminal case. Accordingly, the court cannot grant him relief in a personal restraint petition; therefore, we dismiss K.G.J. from the petition.

Standard of Review

Griffith contends this court should apply the standard from *Turner v. Safley*, 482 U.S. 78, 89, 107 S. Ct. 2254, 96 L. Ed. 2d 64 (1987), to review his claim because the Department infringed on his fundamental liberty interests. The Department maintains Griffith's claims should be analyzed under an arbitrary and capricious standard because Griffith does not have a right to unfettered visitation with his child. We agree with the Department.

When a prison regulation infringes on an inmate's constitutional rights, a court must determine whether the regulation is reasonably related to a legitimate penological interest. *Turner*, 482 U.S. at 89. But when a prison regulation does not impinge on an inmate's constitutional rights, review is limited to determining whether the action was arbitrary and capricious. *See In re Pers. Restraint of Dyer*, 143 Wn.2d 384, 395-97, 20 P.3d 907 (2001) (applying the arbitrary and capricious standard to review the Department's denial of extended family visits). Therefore, which standard of review applies depends on whether Griffith was deprived of a constitutional right.

"Many of the liberties and privileges enjoyed by other citizens must be surrendered by the prisoner." *Overton v. Bazzetta*, 539 U.S. 126, 131, 123 S. Ct. 2162, 156 L. Ed. 2d 162 (2003). Constitutional rights incompatible with proper incarceration are not retained by an inmate in custody. *Bazzetta*, 539 U.S. at 131. Protected liberty interests " 'may arise from two sources—the Due Process Clause itself and the laws of the States.' " *Dyer*, 143 Wn.2d at 392 (quoting *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460, 109 S. Ct. 1904, 104 L. Ed. 2d 506 (1989)). To create a liberty interest by statute or regulation, "the action taken must be an atypical and significant deprivation from the normal incidents of prison life." *Dyer*, 143 Wn.2d at 393. Denying an inmate visitation with a particular individual is " 'well within the terms of confinement ordinarily contemplated by a prison sentence.' " *Dyer*, 143 Wn.2d at 392 (quoting *Thompson*, 490 U.S. at 461. Further, under the due process clause, "it is well settled that an inmate does not have a liberty interest in the denial of contact visits by a spouse, relatives, children, and friends." *Dyer*, 143 Wn.2d at 392.

Because Griffith does not have a liberty interest in unfettered visitation with his child, the proper standard of review is whether the Department's actions were arbitrary and capricious.

<u>Arbitrary and Capricious</u>

Griffith contends (1) the Department did not have authority to terminate his parent-child relationship with K.G.J., (2) the Department impermissibly added to

6

his J&S, and (3) the Department's denial of visitation violated its own policies.[2] The Department maintains it had independent authority to deny visitation and was not bound by the J&S, but even if it were, its actions were still permissible. We agree with the Department.

An agency's decision is arbitrary and capricious "only if it is 'willful and unreasoning action in disregard of facts or circumstances.' " *Dyer*, 143 Wn.2d at 395 (internal quotation marks omitted) (quoting *United Parcel Serv., Inc. v. Dep't of Revenue*, 102 Wn.2d 355, 365, 687 P.2d 186 (1984)). The arbitrary and capricious standard is used to review a prison's administrative decisions when constitutional rights are not involved because, "[a] broader scope of review is undesirable in that it would tend to undermine prison administrators' decisions and lead to greater involvement of the courts in matters of internal prison discipline." *Dyer*, 143 Wn.2d at 395-96.

Safety and security in a prison is " 'central to all other corrections goals.' " *Hudson v. Palmer*, 468 U.S. 517, 527, 104 S. Ct. 3194, 82 L. Ed. 2d 393 (1984) (quoting *Pell v. Procunier*, 417 U.S. 817, 823, 94 S. Ct. 2800, 41 L. Ed. 2d 495 (1974)). When the Washington State legislature created the Department, its intent was to create a system "designed and managed to provide the maximum feasible safety for the persons and property of the general public, the staff, and the inmates." RCW 72.09.010. The State grants broad discretion to the Department to "make its own rules for the proper execution of its powers."

---

[2] Griffith maintains the *Turner* framework is the appropriate standard of review and does not explicitly address the arbitrary and capricious standard.

7

RCW 72.01.090. The secretary of the Department has "full power to manage, govern, and name all state correctional facilities, subject only to the limitations contained in laws relating to the management of such institutions." RCW 72.01.050.

The Department's policies for "visits for incarcerated individuals" include a section describing persons ineligible to visit inmates. The policy states, "A minor may be denied due to the nature of a crime of conviction if s/he is profiled as comparable to that of a victim." Wash. Dep't of Corr. (DOC) Policy 450.300 (rev. June 11, 2020) [https://perma.cc/R2X2-8CLT]. The policy also notes the ineligibility of "persons restricted per the Judgment and Sentence (J&S), including conditions of community supervision that prohibit contact with an individual or category of individuals." DOC Policy 450.300(III)(A)(3).

### 1. DOC Authority

First, Griffith claims the Department fully deprived him of his fundamental right to a parent-child relationship without authority to do so.[3] Griffith contends the "prison is acting alone" and "[w]hen the prison prohibits phone calls, [Z]oom video calls, letters, in person visits, and other forms of contact, they are imposing full deprivation of the relationship." But, Griffith mischaracterizes the actions of the Department. The Department did not prohibit all contact between Griffith and

---

[3] Griffith cites to many cases and statutes discussing termination of parental rights, but these sources are inapplicable. *E.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974); *Lehr v. Robertson*, 463 U.S. 248, 103 S. Ct. 2985, 77 L. Ed. 2d 614 (1983); RCW 74.14A.040. Not only are Griffith's rights not being terminated, none of the sources cited address the parental rights of currently incarcerated parents.

K.G.J., as Griffith claims.  The Department restricted only in-person and video visits between Griffith and K.G.J.  All other restrictions, such as phone calls and letters, were prohibited by the court in the J&S.[4]

Further, the Department had authority to restrict visitation.  Under chapter 72.01 RCW, the Department is allowed to adopt and implement rules and regulations that further the interests of the institution, including the safety of inmates and visitors.  *See* DOC Policy 450.300.  While the Department recognizes the vital role of family visitation, the Department was concerned about K.G.J.'s safety.  After a full review of Griffith's records, the VMDT determined visitation was not in the best interest of K.G.J.'s safety or Griffith's rehabilitation.  Among other considerations, the Department based this decision on Griffith's criminal history, its determination that Griffith has a "deviant sexual arousal system," and Griffith's inability to adhere to the conditions of the no-contact order.  Additionally, the Department determined that Candace was not an appropriate supervisor for visitation because she had helped facilitate the contact between Griffith and K.G.J. that led to his violation of the no-contact order.[5]  Accordingly, the Department had authority to deny visitation and based its decision on the facts and circumstances of Griffith's incarceration.

---

[4]  Just as Griffith sought modification of his J&S to allow for visitation, he can seek modification to allow phone calls and letters.

[5]  Candace maintains that she was unaware she was not allowed to send pictures or court documents with K.G.J.'s signature to Griffith, and she was not being purposefully defiant.

2. Additional Terms

Next, Griffith claims the Department impermissibly added to his J&S by restricting all communication with K.G.J. and requiring Griffith to complete sex offender treatment. The Department contends it did not add to Griffith's J&S because it was the court that created the requirements regarding no contact, and the Department did not condition visitation on Griffith completing treatment. We agree with the Department.

First, Griffith claims the Department impermissibly added to his J&S when it restricted all communication with K.G.J. But the Department asserts that because it was not represented in court when Griffith's J&S was issued or amended, the court lacks jurisdiction to impose conditions on the Department, and the Department was not bound by the J&S. *See Dep't of Soc. & Health Serv. v. Zamora*, 198 Wn. App. 44, 64-65, 392 P.3d 1124 (2017). The Department further asserts that even if the Department was bound by the J&S, the court's amendment of the J&S allowing Griffith visitation with K.G.J. was permissive, not mandatory.[6] Accordingly the Department's denial of visitation was not in conflict with the J&S, nor did it add to the J&S. We agree with the Department.

Griffith also alleges the Department added to his J&S by requiring him to complete treatment. Griffith claims treatment is not a condition of his J&S and,

---

[6] The amendment stated, "[T]he no contact provision is amended to state that visitation with the defendant's minor son, [K.G.J.], is permitted when supervised by an adult who has knowledge of the conviction."

therefore, it cannot be a requirement for visitation. Griffith correctly notes the Department's policies preclude him from receiving treatment because of his LWOP status. Griffith is also correct that the VMDT documented Griffith's "refus[al] to participate in treatment" in its review decision. The Department does not deny its policies prevent Griffith from participating in treatment, but contends that "[s]ex offender treatment is not a precondition to the Department approving visits between Mr. Griffith and his minor son, but Mr. Griffith's ongoing sexual deviancy is a risk properly considered by the Department."

While the Department's assertion that Griffith *refused* to complete treatment is inaccurate—Griffith has not been offered and refused treatment—it was not error for the court to consider the reason why Griffith was ordered to participate in treatment and has not done so: He is a persistent offender with convictions for sexual assault of two minors. Griffith presents no evidence that the Department based its decision to deny Griffith's application solely on Griffith's inability to complete treatment. Because the Department did not require Griffith to complete treatment in order to have visitation with K.G.J., it did not impermissibly add to Griffith's J&S.

The Department's decision to deny Griffith's application was based on a thorough review of his record; therefore, we conclude its decision was not arbitrary or capricious.

11

### *Turner* Standard

Griffith contends his liberty interest in visitation with his son survives incarceration and, under the *Turner* framework, the Department's regulations constitute unreasonable state action. As discussed *supra*, Griffith does not have a liberty interest in unfettered visitation with his child; therefore, the *Turner* framework does not apply. Accordingly, we decline to reach this claim.

We deny the petition.

_____

WE CONCUR:

_____     _____
Díaz, J.                      Chung, J.